151 P.3d 732

KAHALA ROYAL CORPORATION,
Plaintiff–Appellant,

v.

GOODSILL ANDERSON QUINN & STI-
FEL, a Limited Liability Law Partner-
ship, LLP; Jones, Day, Reavis & Pogue,
a Foreign Law Partnership, and Alan E.
Friedman, Defendants–Appellees;

and

John and Jane Does 1–20; Doe Business
Entities 1–10; and Doe Governmental
Entities 1–10, Defendants.

Kahala Hotels Associates Limited
Partnership, Plaintiff–
Appellant,

v.

Goodsill Anderson Quinn & Stifel, a Lim-
ited Liability Law Partnership, LLP;
Jones Day, a Foreign Law Partnership;
Alan E. Friedman; Wolfgang Hultner;
and John Witt, Defendants–Appellees,

and

John Does 1–20, Doe Business Entities 1–
10; and Doe Governmental Entities
1–10, Defendants,

and

Kahala Royal Corporation, Party
in Interest–Appellant.

Nos. 26669, 26670.

Supreme Court of Hawai'i.

Jan. 11, 2007.

Matthew J. Viola, Honolulu, On the briefs, for plaintiff-appellant, Kahala Royal Corporation.

Susan M. Ichinose, Honolulu, On the briefs, for plaintiff-appellant, Kahala Hotels Associates Limited Partnership.

William A. Bordner and John Reyes–Burke, Honolulu, (of Burke McPheeters Bordner & Estes), On the briefs, for defen-

---

dants-appellees, Jones Day and Alan E. Friedman.

John S. Nishimoto and Calvin E. Young, Honolulu, (of Ayabe Chong Nishimoto Sia & Nakamura), On the briefs, for defendant-appellee, Goodsill Anderson Quinn & Stifel.

A. Bernard Bays and Sharon E. Har, Honolulu, (of Bays, Deaver, Lung, Rose & Baba), On the briefs, for defendants-appellants, Wolfgang Hultner and John Witt.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ., and Circuit Judge NISHIMURA, in place of ACOBA, J., Recused.

## Opinion of the Court by MOON, C.J.

Inasmuch as appeal Nos. 26669 and 26670 present identical relevant facts and similar legal issues, we consolidated these appeals for purposes of disposition, pursuant to Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 3(b) (2006).[1] Central to both appeals is the applicability of the defenses of litigation immunity, collateral estoppel, and waiver, as well as whether the defendants in both actions were entitled to an award of attorneys' fees, pursuant to Hawaiʻi Revised Statutes (HRS) § 607–14 (Supp.2005), quoted *infra*.

The parties to appeal No. 26669 are plaintiff-appellant Kahala Royal Corporation (KRC) and defendants-appellees Goodsill Anderson Quinn & Stifel (Goodsill), Jones Day, and Alan E. Friedman[2] [hereinafter, the KRC Appeal]. The parties to appeal No. 26670 are plaintiff-appellant Kahala Hotel Associates Limited Partnership (KHALP) and defendants-appellees Goodsill, Jones Day, Wolfgang Hultner, and John Witt [hereinafter, the KHALP Appeal]. KRC is purportedly a "party in interest" to the KHALP Appeal.

Briefly stated, KHALP is a partnership that owns the Kahala Mandarin Oriental Ho-

---

1. HRAP Rule 3(b), entitled "Joint or consolidated appeals," provides that:

   If two or more parties are entitled to appeal from a judgment or order and their interests are such as to make joinder practicable, they may file a joint notice of appeal and thereafter proceed on appeal as a single appellant. *Appeals may be consolidated by order of either of*

   *the Hawaiʻi appellate courts upon the court's own motion,* upon motion of a party, or upon stipulation of the parties to the several appeals. (Emphasis added.)

2. Friedman is a partner in the law firm of Jones Day. All future references to Jones Day include Friedman unless otherwise indicated.

tel (the Hotel). The two general partners of KHALP—KRC and non-party Mandarin Oriental Holdings (USA), Inc. (MOHUSA)—have a contentious relationship, in large part resulting from KRC's dissatisfaction with the performance of MOHUSA's affiliates that manage and operate the Hotel on a day-to-day basis. KRC eventually initiated an arbitration proceeding against MOHUSA, claiming that MOHUSA failed to properly oversee and control its affiliates. KRC also initiated two separate arbitration proceedings on behalf of KHALP against MOHUSA's affiliates, alleging that the affiliates mismanaged the Hotel. Subsequently, KRC sought MOHUSA's permission to inspect and review KHALP's books and records, which were in MOHUSA's possession as the administrative partner of KHALP, in order to prepare for the arbitration proceedings. MOHUSA, allegedly through Hultner and Witt, who are officers and/or directors of MOHUSA and/or its affiliates, then retained the law firms of Goodsill and Jones Day [hereinafter, collectively, the Lawyers] to purportedly represent its interests and those of its affiliates. The Lawyers thereafter undertook the management of the inspection and review process of KHALP's books and records. KRC, however, claimed that the inspection process frustrated its review, prompting KRC to modify its earlier arbitration demand against MOHUSA to allege that MOHUSA had breached its contractual, common law, and statutory duties to KRC and KHALP by, *inter alia*, improperly interfering with KRC's access to the books and records. KRC and KHALP thereafter separately initiated the instant actions against the Lawyers for their role in allegedly aiding MOHUSA in interfering with KRC's access to KHALP's books and records. KHALP also named Hultner and Witt as defendants for their alleged role in retaining the Lawyers.

In the KRC Appeal, KRC appeals from a final judgment of the Circuit Court of the First Circuit, the Honorable Dexter D. Del

Rosario presiding, entered on June 3, 2004 in favor of the Lawyers. Final judgment was entered pursuant to an order granting the Lawyers' motion to dismiss or for summary judgment and a separate order granting attorneys' fees in favor of the Lawyers. On appeal, KRC challenges both orders, claiming that the circuit court erred in ruling that: (1) KRC was collaterally estopped from bringing its claims; (2) the Lawyers' conduct was privileged pursuant to litigation immunity; (3) KRC waived its right to assert its claims against the Lawyers; and (4) the Lawyers were entitled to fees pursuant to HRS § 607–14.

In the KHALP Appeal, KHALP appeals from a separate June 3, 2004 final judgment, also entered by Judge Del Rosario, challenging separate orders of the circuit court granting (1) the Lawyers' motion to dismiss or for summary judgment, (2) Hultner and Witt's motion to dismiss, and (3) attorneys' fees in favor of the Lawyers, Hultner, and Witt [hereinafter, the KHALP defendants] and costs in favor of Hultner and Witt only, inasmuch as the Lawyers did not request an award of costs. Specifically, KHALP contends that the circuit court erred in ruling, *inter alia*, that: (1) KHALP was not the real party in interest; (2) KHALP was collaterally estopped from bringing its claims; (3) the Lawyers' conduct was privileged pursuant to litigation immunity; (4) KHALP waived its right to assert its claims against the KHALP defendants; and (5) the KHALP defendants were entitled to fees pursuant to HRS § 607–14. KRC also appeals from the June 3, 2004 final judgment entered in the KHALP Appeal, challenging the award of fees in favor of the KHALP defendants inasmuch as the circuit court ruled that KRC, not KHALP, was liable for the fees and costs incurred by the KHALP defendants in the KHALP Appeal.[3]

For the reasons discussed below, we affirm in part and reverse in part the June 3, 2004

---

3. As indicated above, KHALP also challenges the orders granting fees in favor of the KHALP defendants and costs in favor of Hultner and Witt against KRC. In its opening brief, KHALP explains that it

is not immediately prejudiced by the [o]rders granting the [KHALP d]efendants' motions for fees [and costs]. It nevertheless appeals from those [o]rders solely to the extent that it has a contingent liability thereunder as the "real party in interest" in this action.

final judgments entered in appeal Nos. 26669 and 26670.

## I. BACKGROUND

### A. Factual Background

#### 1. The Partnership, the Partners, and MOHUSA's Affiliates

As previously stated, KHALP is a registered Hawai'i limited partnership that owns the Hotel. Pursuant to an "Amended and Restated Limited Partnership Agreement," dated February 1, 1995 [hereinafter, the Partnership Agreement], KRC and MOHUSA became the sole general partners of KHALP. The Partnership Agreement provides that KRC and MOHUSA each hold interests of both general and limited partners in KHALP. Specifically, KRC holds a sixty percent interest in KHALP, and MOHUSA holds the remaining forty percent interest.[4] The Partnership Agreement also provides that MOHUSA is the "Administrative Partner" of KHALP. As the Administrative Partner, MOHUSA is responsible for "all normal day-to-day administrations of the affairs of [KHALP,]" including the maintenance of KHALP's books and records. KHALP's books and records were to be "open to inspection and examination by the [p]artners . . . at all reasonable times during normal business hours."

The Hotel is operated and managed on a day-to-day basis by MOHUSA's three affiliates, Mandarin Oriental Management (USA), Inc., Mandarin Oriental Overseas Management Limited, and Mandarin Oriental International Limited [hereinafter, collectively, the Mandarin Managers], pursuant to three hotel management agreements with KHALP, which were contemplated in the Partnership Agreement [hereinafter, the Management Agreements]. Although KRC is not actively involved in the operation and management of the Hotel, KRC has the power to "exercise" the "rights and privileges" of KHALP "under, pursuant to[,] or otherwise with respect to" the Management Agreements and KHALP's dealings with MOHUSA and its affiliates, i.e., the Mandarin Managers, under section 10.6.2 of the Partnership Agreement.[5]

#### 2. The Financial Structure of KHALP and Initiation of the Three Arbitration Proceedings

As previously indicated, KRC holds a sixty percent interest in KHALP, and MOHUSA holds the remaining forty percent interest. Since the mid to late 1990s, the Hotel has produced annual net operating income ranging between $4 million and $7 million. However, at the same time, KHALP sustained operating losses, renovation cost overruns, and a first mortgage indebtedness with a principal balance of over $37 million. As such, the Hotel's "level of net operating income is insufficient to support the capital structure of [KHALP]." In addition, MOHUSA has a "put option" under the Partnership Agreement. Article XVI of the Partnership Agreement provides MOHUSA the one-time right to require KRC to purchase its equity interest in KHALP. The put option was to be exercised between January 1, 2005 and March 1, 2005. If the put option was exercised, MOHUSA was entitled to receive a minimum of $86 million for its equity interest.

KHALP's financial struggles and the possibility of MOHUSA exercising its put option appears to have caused the relationship between KRC and MOHUSA to become contentious. Moreover, KRC had become dissatisfied with the Mandarin Managers' operation and management of the Hotel. According to KRC, the Management Agree-

---

4. Although all the parties state that KRC holds a sixty percent interest in KHALP, the Partnership Agreement states that non-party Kahala Hotel Operating & Management Corp. (KHOMC) holds a "zero and .6%" limited interest in KHALP and that KRC holds a 59.4 percent interest in KHALP. Nevertheless, inasmuch as KHOMC's interest in KHALP is immaterial to the instant appeals, we will likewise refer to KRC's interest in KHALP as sixty percent.

5. Specifically, section 10.6.2 of the Partnership Agreement provides in relevant part:

Notwithstanding anything herein to the contrary, [KRC] shall be entitled, without [a]pproval of any other [p]artner, to exercise all of the rights and privileges of the owner of the Hotel under, pursuant to or otherwise with respect to the Management Agreement[s] and [KHALP]'s dealings with [MOHUSA] and [its affiliates].

ments provide for, *inter alia,* "substantial compensation for the Mandarin Managers regardless of the profitability of the Hotel[.]" Consequently, KRC decided to initiate arbitration proceedings (1) against MOHUSA on behalf of itself and (2) against the Mandarin Managers on behalf of KHALP.[6]

Four years prior to the put option deadline, on January 31, 2001, KRC served a "Notice and Demand" for arbitration on MOHUSA pursuant to the Partnership Agreement [hereinafter, the Partner Arbitration]. The Notice and Demand for arbitration essentially alleged that MOHUSA breached certain duties by, *inter alia,* failing to investigate and prosecute claims of mismanagement against the Mandarin Managers. Also on the same day, KRC—on behalf of KHALP—served two separate Notices and Demands for arbitration against the Mandarin Managers, pursuant to the Management Agreements [hereinafter, the Managers Arbitrations]. Essentially, the two Notices and Demands for arbitration alleged that the Mandarin Managers had breached their fiduciary duties and mismanaged the Hotel.

### 3. Events Following the Initiation of the Arbitration Proceedings

On February 2, 2001, the parties agreed, in writing, to stay the Partner Arbitration and the Managers Arbitrations until thirty days after any of the parties "give[ ] notice to the other of termination of the stay, provided that no such notice to terminate shall be given before March 31, 2001." On February 12, 2001, KRC—on behalf of itself and KHALP—sought MOHUSA's permission to

inspect and review KHALP's books and records. According to KRC, such inspection was necessary in order to prepare for and substantiate the claims asserted in the Managers Arbitrations. KRC retained Peterson Consulting as its authorized representative with respect to the inspection of the books and records.

Meanwhile, MOHUSA and the Mandarin Managers, allegedly through Hultner[7] and Witt,[8] retained the Lawyers. According to a February 16, 2001 letter sent by Jones Day to KRC's counsel, Jones Day informed KRC's counsel that it was retained by MOHUSA and the Mandarin Managers to represent them "in connection with the disputes alleged by [KRC] . . . to have risen under the [Partnership Agreement] and/or the [Managers Agreements] pertaining to the [Hotel]." Subsequently, the Lawyers, particularly Goodsill, undertook the management of the inspection process of KHALP's books and records. The inspection process established by Goodsill—which was allegedly acting under the direction of and/or in coordination with Jones Day—required Peterson Consulting "to request information and/or documents and/or to pose specific questions about the particular records in writing." Litigation paralegals employed by Goodsill then reviewed the written requests with a litigation partner employed by Goodsill. During or after such review, the requests were transmitted to the Hotel's accounting staff, "who would, to the extent that they were able to do so, retrieve the records, create reports on requested information[,] or answer the posed questions." Although KRC claimed that the

---

6. Both the Partnership Agreement and the Management Agreements require all disputes arising under the agreements to be submitted to arbitration.

7. According to KHALP, Hultner is (1) the president of MOHUSA, (2) the chief executive officer (CEO) of Mandarin Oriental Management (USA), Inc., and (3) able to act on behalf of Mandarin Oriental Overseas Management Limited and Mandarin Oriental International Limited.

8. According to KHALP, Witt is (1) a director of MOHUSA, (2) the president of Mandarin Oriental Management (USA), Inc., (3) a "finance director" of Mandarin Oriental International Limited, and (4) able to purportedly act on behalf of

Mandarin Oriental Overseas Management Limited.

In addition, section 10.7.1 of the Partnership Agreement provides that an "Executive Committee" consisting of five "Authorized Representatives" of KRC and MOHUSA is to oversee the operations of KHALP and the activities of MOHUSA in its capacity as the Administrative Partner. The five Authorized Representatives are to be chosen as follows: (1) two representatives of KRC chosen by KRC; (2) two representatives of MOHUSA chosen by MOHUSA; and (3) one representative of KRC chosen by KRC and approved by MOHUSA. According to KHALP, Hultner and Witt have been held out to be MOHUSA's Authorized Representatives.

inspection process imposed by Goodsill limited its review of the books and records, MOHUSA maintained that the inspection process "acted to facilitate" KRC's request to review such books and records.

Peterson Consulting ended its efforts to review the books and records sometime in the late spring of 2001, "after it had received considerable quantities of information through Goodsill, but without having been able to generate any conclusions as a result of its inquiries." Goodsill's invoice for the services it rendered with respect to the management of the inspection process, in the amount of $47,920.74, was paid by the Hotel. Inasmuch as the Hotel's funds were held by the Mandarin Managers "as the agent[s] for and in the name of" KHALP, KHALP ultimately paid Goodsill's invoice.

On May 30, 2001, KRC requested MOHUSA's permission to further inspect KHALP's books and records, "seeking an extensive list of particularized information from the books and records about specific areas of management practice." By letter dated August 2, 2001, MOHUSA denied KRC's request for further inspection, "citing its duty to conserve the resources of the Hotel in the absence of a good faith business purpose being shown by [KRC] as to why the information should be generated."

For approximately a year and four months, the parties did not appear to discuss any of the pending matters. On November 13, 2002, KRC's counsel sent three letters to the Mandarin Managers, providing formal notice of KRC's and KHALP's decision to lift the stay of the arbitration proceedings.

### 4. Goodsill's Petition for Admission Pro Hac Vice

On December 31, 2002, Goodsill filed a petition for admission *pro hac vice* of Friedman and Gregory D. Schetina (of counsel to Jones Day) "to appear and represent [MOHUSA and the Mandarin Managers] in connection with arbitration proceedings and any related judicial proceedings in Hawai'i pertaining to the [Hotel] initiated by [KRC] and its President, Katsumi Iida" with the circuit court [hereinafter, the petition].[9] The petition was served on KRC.

On January 15, 2003, KRC and Iida jointly filed a memorandum in opposition to the petition, essentially contending that Goodsill, Friedman, and Schetina should be "disqualified" "from acting as counsel for parties adverse to [KHALP]" because "there is evidence that [Friedman and Schetina] have actually participated with [Goodsill] in the representation of [MOHUSA] in its conduct of partnership business[.]" At some point, however, KRC and Iida withdrew their opposition to the petition. On February 12, 2003, the circuit court entered a judgment granting the petition.

### 5. The Partner Arbitration

In late January and early February 2003, KRC served several pleadings in the Partner Arbitration that (1) withdrew the claims asserted in KRC's earlier Notice and Demand for arbitration, (2) set forth new claims against MOHUSA, and (3) articulated the relief sought by KRC based on the new claims.[10] KRC essentially alleged that MOHUSA had breached its contractual, common law, and statutory duties to KHALP and KRC by: (1) improperly interfering with KRC's access to KHALP's books and records; (2) abusing its position as Administrative Partner by allowing the Lawyers to usurp its powers in order to protect the

---

9. The Honorable Gary W.B. Chang presided over this separate proceeding.

10. On appeal, KRC explains why it decided to withdraw its original claims (*i.e.*, that MOHUSA breached certain duties by, *inter alia*, failing to investigate and prosecute claims of mismanagement against the Mandarin Managers) and assert new claims in the Partnership Arbitration:

> The pursuit of KHALP's claims against the Mandarin Managers [in the Managers Arbitrations] could not effectively take place until

> KRC had a fair opportunity to review KHALP's books and records. KRC[,] therefore[,] recognized that [the Partner Arbitration] had to focus on gaining reasonable access to the books and records and stopping MOHUSA, which, with the active participation of [the L]awyers, was abusing its position as Administrative Partner and breaching its fiduciary duties to [KHALP] and KRC in order to protect its affiliates, the Mandarin Managers.

(Citation to the record omitted.)

interests of the Lawyers' other clients—and KHALP's adversaries—*i.e.*, the Mandarin Managers; and (3) using KHALP funds to pay the Lawyers. KRC set forth fifteen "resolutions," many with several "sub-resolutions," based on its new claims. These resolutions requested, in relevant part:

1. An order granting [KRC] equal and identical access to the books and records of KHALP that MOHUSA enjoys.

2. An order requiring MOHUSA to immediately repay to KHALP those attorneys' fees and costs charged by [Goodsill] for its work assisting MOHUSA in responding to [KRC]'s requests for KHALP (believed to be at least $47,920.74).

3. A determination that MOHUSA breached its duty to [KRC] by not providing information concerning [KHALP]'s business and affairs after demand for information had been received.

4. A determination that MOHUSA has engaged in conduct relating to KHALP business which makes it not reasonably practicable to carry on the business in partnership with MOHUSA.

. . . .

8. A determination that MOHUSA breached its fiduciary duty of loyalty to [KRC] by dealing with [KHALP] in the conduct of partnership business as or on behalf of a party having an interest adverse to [KHALP].

. . . .

8.2: An order directing MOHUSA to direct its agents, including but not limited to [the Lawyers], to cease taking positions adverse to [KHALP], in particular[,] to cease representing the Mandarin Managers against [KHALP] in related arbitrations.

8.3: An order directing MOHUSA to turn over to [KRC] all documents in its possession or its agent's possession (including the files of [the Lawyers]) related to [KRC]'s or [KHALP]'s disputes against the Mandarin Managers.

. . . .

12. An order of expulsion of MOHUSA as a partner in KHALP.

13. An order dissolving the KHALP partnership between [KRC] and MOHUSA.

(Numbering altered.)

On March 20 and 21, 2003, an arbitration panel (the panel) held a hearing in the Partner Arbitration. On April 2, 2003, the panel issued its "Memorandum Opinion and Order," granting in part and denying in part KRC's claims for relief [hereinafter, the arbitration order]. The panel ruled in relevant part as follows:

A. Turning first to the claim [that KRC] was denied appropriate access to the books and records of [KHALP], the panel is in agreement with [KRC]. . . . In the panel's view, while . . . [KRC]'s right to inspect the books and records is not as unfettered as that appropriate for an auditor, it is certainly greater in contextual environment than that which was afforded by [MOHUSA]'s procedures for inspection. . . . Without ascribing any particular motivation to the attorney review process incorporated into [MOHUSA]'s procedure, it is clear that such a review was not intended to improve [KRC]'s access to books and records that by law and under the [Partnership] Agreement [KRC] was entitled to expect. . . .

B. [KRC] next argues that [MOHUSA] should be required to repay to [KHALP] the attorneys' fees and costs charged by Goodsill in connection with its work on the document inspection and production effort. [MOHUSA] argues that Goodsill's efforts benefited [sic] [KHALP] rather than [MOHUSA] and that the fees and expenses are thus properly payable by [KHALP].

The panel agrees with [KRC] on this issue. [MOHUSA] was and is entitled to defend itself against claims made by [KRC] either under the [Partnership] Agreement or under the Management Agreements for the Hotel. The panel concurs with [MOHUSA] that it is also entitled to engage the counsel of its choice for that defense. However, the panel concludes that [MOHUSA]'s engagement of

counsel for the inspection of the books and records undertaken by Peterson [Consulting] was not to facilitate that process on behalf of [KHALP], but rather to regulate that process in a manner conducive to [KRC]'s defense against the then pending arbitration claims. [MOHUSA] cannot have it both ways. If [the Lawyers] were [MOHUSA]'s defense team representing [MOHUSA] and not [KHALP], then the expenses associated with that defense are properly to be borne by [MOHUSA].

. . . .

C. The main thrust of the balance of [KRC]'s requests for relief are centered on two concepts. First, [KRC] argues that, as Administrative Partner of [KHALP], [MOHUSA] owed duties under common law, the [Partnership] Agreement and the Hawai'i statutes not to interfere with [KRC]'s efforts, as [MOHUSA]'s partner, to investigate and possibly pursue claims against the Mandarin Managers. Second, [KRC] argues that specific provisions of the [Partnership] Agreement . . . required that [MOHUSA] "step back" and allow [KRC] to exercise the rights of Hotel owner in any dispute with the Mandarin Managers. In both of these areas, [KRC] argues that [the Lawyers] were improperly retained to represent parties with conflicting interests[ ] and that the activities of the [Lawyers] in undertaking the defense of [MOHUSA] and its affiliates[, *i.e.*, the Mandarin Managers,] violates ethical and fiduciary obligations. As a result of [MOHUSA]'s activities in conducting what amounts to a common defense with the Mandarin Managers, [KRC] argues that it is no longer reasonably practicable to carry on the business of [KHALP] with [MOHUSA] as the Administrative Partner. Thus, [KRC] seeks to have [KHALP] dissolved, or in the alternative, have [MOHUSA] expelled as partner in [KHALP].

. . . .

The panel has concluded that [KRC] had the right to inspect the books and records in order to pursue inquiries into the conduct of the Mandarin Managers, and that those rights were effectively abrogated by [MOHUSA]'s regulation of the inspection process. The panel has also concluded that [MOHUSA] was entitled to defend itself with counsel of its choice against possible attacks by [KRC]. [KRC] is not entitled to require that [MOHUSA] effectively lobotomize itself in its dealings with its affiliates by taking the side of [KRC].

. . . .

The appropriate relief in this instance is not, however, what [KRC] has suggested. As noted, it is not appropriate to require [MOHUSA] to attempt to create a "Chinese Wall" or to perform some other act unnatural for a corporate enterprise. It is also not appropriate to dissolve [KHALP] or to expel [MOHUSA] as such relief is far too draconian in its impact on [MOHUSA] in the circumstances presented. . . . The appropriate relief in these circumstances is to temporarily remove the source of the difficulty, the power of the Administrative Partner to regulate [KRC]'s activities in its legitimate review of the activities of [MOHUSA] and the Mandarin Managers.

. . . .

D. Much of [KRC's] argument relating to alleged breaches of fiduciary duties revolves around [MOHUSA]'s counsel. [KRC] argues that[,] since [KRC] and [MOHUSA] are partners in [KHALP], and since any claims against the Mandarin Managers are claims belonging to [KHALP], then [MOHUSA] violated its duties to [KRC] by retaining [the Lawyers] to act as counsel representing both [MOHUSA] and the Mandarin Managers in their disputes with [KRC]. *[KRC] argues that such retentions could not have been ethically accepted by the [Lawyers], and thus, that the [Lawyers] engaged in unethical conduct, violated their respective duties to [KRC], and, that, as the agent of [MOHUSA], these further fiduciary lapses are attributable to [MOHUSA].* The panel paid particular attention to the expert witnesses who testified on the ethical issues raised by [KRC]. . . . *As [MOHUSA's expert] noted in her declaration, [KRC] had no legitimate expectation that [MOHUSA]'s counsel would look out for [KRC]'s interests. We agree.*

The panel has previously concluded that [MOHUSA] has the right to be represented by counsel of its choice and to defend itself. We have found that such defense could not extend to the use of [MOHUSA]'s powers as Administrative Partner. However, *it is clear that [KRC] had no right to expect that counsel*, whose only representation of [MOHUSA] or the Mandarin Managers since the original agreements were signed in 1995 is with respect to these claims and predecessors, *would or should put the interests of [KRC] ahead of the interests of their clients. The panel concludes that counsel for [MOHUSA] and the Mandarin Managers[, i.e., the Lawyers,] have acted ethically in all respects and have violated no duties to [KRC], whether under the common law, statutes or otherwise* ....

(Emphases added.) The arbitration order also contained the following "order":

[MOHUSA] shall be entitled to retain counsel of its choosing for its defense of any claim, past or future, made by [KRC]. *Counsel for [MOHUSA] has not engaged in unethical conduct or conduct that constitutes a breach of any ethical, fiduciary or other duty owed to [KRC].*

(Emphasis added.) On October 27, 2004, the Circuit Court of the First Circuit, the Honorable Eden Elizabeth Hifo presiding, entered a judgment confirming the arbitration order. According to the parties, there has been no subsequent action taken with respect to the Managers Arbitrations.

### B. *Procedural History*

#### 1. **The KRC Appeal**

##### a. *KRC's complaint*

On January 28, 2003, prior to the arbitration hearing and order, KRC filed a complaint against the Lawyers with the circuit court. On February 20, 2003, KRC filed an amended complaint. In its amended complaint, KRC alleged:

15. In [managing the inspection process of KHALP's books and records, the Lawyers] were acting and/or purporting to act on behalf of KHALP in maintaining, controlling, and protecting its books and records.

. . . .

17. By virtue of its conduct [in managing the inspection process, the Lawyers] were the attorneys for KHALP and/or owed fiduciary duties to KHALP and [KRC].

18. By virtue of their representation of the Administrative Partner, [the Lawyers] assumed fiduciary and good faith obligations to KHALP and its partners, including [KRC].

19. Goodsill has commenced the representation of four clients: [MOHUSA] and the Mandarin Managers in three separate arbitration proceedings. These include the [Managers Arbitrations and the Partnership Arbitration].

20. By virtue of the foregoing, Goodsill has undertaken to represent parties with interests directly adverse to those of their fiduciary and good faith obligee, [KRC].

21. Goodsill plans to continue that representation and to appear for the Mandarin Managers in the [Managers Arbitrations], while continuing to serve as the agents of [MOHUSA] and to represent [MOHUSA] in another proceeding[, i.e., the Partnership Arbitration,] that will give it access to confidential internal KHALP information.

22. By virtue of the foregoing facts, as well as by letters written and other conduct indicating representation, [Jones Day has] commenced representing parties with interests directly adverse to those of their former fiduciary and good faith obligee, [KRC].

. . . .

26. The cooperation by [MOHUSA] with parties adverse to KHALP and [KRC], to wit, the Mandarin Managers, constitutes a breach of MOHUSA's fiduciary, good faith, and other legal duties to [KRC] and [KHALP]. By purporting to act on behalf of and undertaking the representation of KOHUSA [sic] at the same time they are representing the Mandarin Managers, [the Lawyers] have and are continuing to perform, assist, participate in, conspire as to, induce and aid and abet

A. The manipulation of MOHUSA to the benefit of the Mandarin Managers;

B. The use of MOHUSA as the mere instrumentality or alter ego of the Mandarin Managers;

C. The communication of confidential partnership information by MOHUSA to the Mandarin Managers;

D. The cooperation of MOHUSA with the Mandarin Managers to frustrate and/or defeat KHALP's claims against them; and

E. The breach by MOHUSA of fiduciary, good faith and other duties owed by MOHUSA to [KRC] and KHALP; and

F. The wrongful interference in [KRC]'s contractual relationship with MOHUSA, as well as KHALP's contractual relationship with the Mandarin Managers.

KRC's amended complaint set forth the following claims for relief: (1) unfair methods of competition; (2) intentional interference with contractual relations (IICR); and (3) intentional interference with prospective economic advantage (IIPEA). Specifically, KRC alleged:

27. [MOHUSA] is engaged in trade or commerce, as are [the Lawyers]. The ... conduct by [MOHUSA] in colluding and cooperating with adversaries of KHALP constitutes an unfair method of competition in the hotel ownership business within the meaning of [HRS c]hapter 480. [The Lawyers] are assisting and/or participating in that conduct and are therefore liable to [KRC] under [HRS c]hapter 480.

28. [The Lawyers] are representing clients and earning fees in violation of the rules of professional responsibility and the ethical duties attendant to their profession. As such[,] they are engaged in unfair methods of competition within the meaning of [HRS c]hapter 480.

29. [The Lawyers'] conduct is knowingly interfering with [KRC]'s right to full performance of the [P]artnership [A]greement. Said agreement entitles [KRC] the ability to freely inspect [KHALP] books and records and to receive the complete

fiduciary loyalty of its partner MOHUSA. [The Lawyers] are knowingly participating in a scheme under which MOHUSA is limiting [KRC]'s inspection rights, and sharing attorneys' fees, confidences, strategy and information with and for the benefit of the Mandarin Managers in their dispute with KHALP. By virtue of the foregoing facts, [the Lawyers] are liable to [KRC] for [IICR] and [IIPEA].

Finally, KRC requested (1) a declaration that the Lawyers were disqualified from representing MOHUSA and the Mandarin Managers in connection with their disputes with KHALP or KRC, (2) an injunction (a) preventing the Lawyers from representing MOHUSA and the Mandarin Managers in connection with their disputes with KHALP or KRC and (b) ordering the Lawyers to turn over all their files to KRC relating to the work done for MOHUSA and the Mandarin Managers with respect to any matter involving KHALP or KRC, and (3) money damages, including general and special compensatory damages, punitive damages, treble damages pursuant to HRS chapter 480, attorneys' fees, costs, and other relief deemed "just and proper."

b. *the Lawyers' motion to dismiss or for summary judgment*

On June 27, 2003, subsequent to the arbitration hearing and order, Jones Day filed a motion to dismiss or for summary judgment in which Goodsill joined on July 3, 2003. Jones Day's motion was based on three independent grounds: (1) collateral estoppel; (2) litigation immunity; and (3) waiver.[11] Specifically, Jones Day asserted that, under collateral estoppel, the arbitration panel's rejection of KRC's contention that the Lawyers owed—and breached—contractual, common law, and statutory duties to KRC bars it from re-litigating the same contention in the instant action. According to Jones Day, inasmuch as KRC's business tort claims are based entirely upon KRC's contention that the Lawyers owed KRC such duties and KRC is collaterally estopped from asserting that such duties exist, KRC's claims fail as a matter of law.

---

11. At the hearing on Jones Day's motion, counsel for Jones Day stated that the instant motion was a summary judgment motion as well as a dismissal motion. Specifically, counsel stated that

the instant motion was a dismissal motion on the collateral estoppel issue and was a summary judgment motion "on all other issues."

Moreover, Jones Day contended that a litigation attorney cannot be held liable to his or her client's litigation adversary under any theory other than malicious prosecution, abuse of process, fraud, or malice. Accordingly, because the Lawyers allegedly served solely as litigation counsel to MOHUSA and the Mandarin Managers and KRC's amended complaint does not allege the aforementioned theories, Jones Day asserted that litigation immunity bars KRC's claims as a matter of law.

Finally, Jones Day maintained that KRC has waived any right to object to the Lawyers' representation of MOHUSA and the Mandarin Managers. According to Jones Day, the undisputed evidence indicates that KRC was aware of—but failed to object to— the Lawyers' representation of MOHUSA and the Mandarin Managers for nearly two years prior to the initiation of the instant action. Specifically, Jones Day pointed to the February 16, 2001 letter sent by Jones Day to KRC's counsel, informing KRC's counsel that it was retained by MOHUSA and the Mandarin Managers to represent them "in connection with the disputes alleged by [KRC] ... to have risen under the [Partnership Agreement] and/or the [Managers Agreements] pertaining to the [Hotel]."

A hearing was held on Jones Day's motion to dismiss or for summary judgment on October 15, 2003. At the conclusion of the hearing, the circuit court stated that it was persuaded by the arguments and authorities cited in Jones Day's motion and, thus, orally granted the motion. On December 1, 2003, the circuit court entered its written order granting Jones Day's motion and Goodsill's joinder therein.

### c. *the Lawyers' motion for attorneys' fees*

Having prevailed on their motion to dismiss or for summary judgment, the Lawyers moved for an award of attorneys' fees pursuant to Hawaiʻi Rules of Civil Procedure (HRCP) Rule 54(d)(2) (2005) [12] and HRS § 607–14 [13] on December 17, 2004. The Lawyers contended that the instant action was in the nature of assumpsit "because KRC allege[d] that [the Lawyers] breached duties to KRC arising from (a) their contractual retention as attorneys for [MOHUSA] and two of [the entities comprising the Mandarin Managers] and (b) the written Partnership Agreement between MOHUSA and KRC." Jones Day sought fees in the amount of $257,066.55.], and Goodsill sought fees in the amount of $88,354.41. The Lawyers did not move for an award of costs.

On March 9, 2004, KRC filed its memorandum in opposition to the Lawyers' motion for fees, primarily arguing that the instant action was not in the nature of assumpsit. KRC also urged that the fees requested by the Lawyers were unreasonable inasmuch as the Lawyers' billing records were replete with duplications and unnecessary work and the hourly rates were excessive.

A hearing was held on the Lawyers' motion for fees on March 17, 2004. At the conclusion of the hearing, the circuit court stated that it was taking the motion under advisement. On June 3, 2004, the circuit court entered an order granting the Lawyers' motion for fees in its entirety, *i.e.*, in the amount of $257,066.55 to Jones Day and $88,354.41 to Goodsill.

Final judgment in favor of the Lawyers was entered on June 3, 2004. KRC filed its timely notice of appeal on July 2, 2004.

### 2. The KHALP Appeal

#### a. *KHALP's complaint*

Subsequent to KRC's initiation of its action against the Lawyers, KHALP filed its com-

---

12. HRCP Rule 54(d)(2) provides in relevant part that "[c]laims for attorneys' fees ... shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to proved at trial."

13. HRS § 607–14 provides in pertinent part:

In all the courts, *in all actions in the nature of assumpsit ...*, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable[.]

(Emphasis added.)

plaint against the KHALP defendants (*i.e.,* the Lawyers, Hultner, and Witt) on February 10, 2003. KHALP's complaint set forth the following claims for relief: (1) "participation in, assisting, inducing, procuring, conspiring in, and/or aiding and abetting breaches of fiduciary, contractual and other duties"; and (2) unfair methods of competition.[14] Specifically, KHALP alleged:

18. MOHUSA, as Administrative Partner, through Hultner and Witt, purportedly retained [the Lawyers] to assist it in carrying out its duties as Administrative Partner with respect to [KHALP's] books and records, and in responding to [KRC's] request. . . .

19. At the same time, Hultner and Witt were acting on behalf of the Mandarin Managers in connection with the disputes and requested arbitrations between KHALP and the Mandarin Managers.

. . . .

25. In [managing the inspection process of KHALP's books and records, the Lawyers] were purporting to act on behalf of KHALP through MOHUSA, Hultner and Witt.

26. By virtue of their . . . actions, [the Lawyers] were supposed to be acting as the attorneys for KHALP and/or owed fiduciary duties to KHALP.

27. Hultner and Witt, as members of KHALP's Executive Committee and Authorized Representatives of MOHUSA to KHALP[,] owed fiduciary and other duties to KHALP. . . .

28. By virtue of their representation of its Administrative Partner, [the KHALP defendants] in that capacity assumed fiduciary and good faith obligations to KHALP.

. . . .

34. The cooperation of MOHUSA with the Mandarin Managers in matters adverse to KHALP constitutes a breach of MOHUSA's fiduciary good faith, and other legal duties to [KRC] and [KHALP]. By purporting to act on behalf of and under-

taking the representation of MOHUSA in these matters at the same time they are representing the Mandarin Managers, [the KHALP defendants] have and are continuing to assist, participate in, conspire as to, induce and aid and abet:

A. the manipulation of MOHUSA to the benefit of the Mandarin Managers,

B. the use of MOHUSA as a mere instrumentality or alter ego of the Mandarin Mangers,

C. the communication of confidential partnership information by MOHUSA to the Mandarin Managers,

D. the cooperation of MOHUSA with the Mandarin Managers to defeat KHALP's claims against them and

E. the breach of fiduciary, good faith and other duties by MOHUSA, as well as

F. wrongfully interfering with the contractual relationship between KHALP's partners, its Partnership Agreement, and inducing its breech [sic].

37. MOHUSA and the Mandarin Managers are engaged in trade or commerce, as are [the KHALP defendants]. The . . . conduct by the Mandarin Managers in suborning the collusion and cooperation of MOHUSA, its agents and attorneys with adversaries of KHALP constitutes an unfair method of competition in the hotel business within the meaning of [HRS c]hapter 480. [The KHALP d]efendants are assisting and/or participating in that conduct and are therefore liable to [KHALP] under [HRS c]hapter 480.

38. [The Lawyers] are representing clients and earning fees in violation of the rules of professional responsibility and the ethical duties attendant to their profession. As such[,] they are engaged in unfair methods of competition within the meaning of [HRS c]hapter 480.

Finally, similar to KRC, KHALP requested (1) a declaration that the Lawyers were dis-

14. On appeal, however, KHALP states that the following *three* claims for relief were asserted in its complaint: (1) "tortious inducement of breach of fiduciary duty"; (2) tortious interfer-

ence with contractual relations; and (3) unfair methods of competition. KHALP also "clarifies" on appeal that conspiracy was not alleged as a separate claim for relief in its complaint.

qualified from representing MOHUSA and the Mandarin Managers in connection with their disputes with KHALP, (2) an injunction (a) preventing the Lawyers from representing MOHUSA and the Mandarin Managers in connection with their disputes with KHALP and (b) ordering the KHALP defendants to turn over to KHALP all their files relating to the work done for MOHUSA, the Mandarin Managers, and KHALP with respect to any matter involving KHALP, and (3) money damages, including general, special, and consequential compensatory damages, punitive damages, treble damages pursuant to HRS chapter 480, attorneys' fees, costs, and other relief deemed "just and proper." In addition, KHALP requested an injunction preventing Hultner and Witt "and anyone acting in conjunction with them or at their behest from participating in any way in the disputes between KHALP and the Mandarin Managers on behalf of the Mandarin Managers."

### b. *Hultner and Witt's motion to dismiss*

On March 31, 2003, subsequent to the arbitration hearing and order, Hultner and Witt moved to dismiss KHALP's complaint in which Goodsill joined on May 2, 2003. Hultner and Witt essentially claimed that, because the subject matter of the instant dispute had already been arbitrated in the Partner Arbitration, KHALP's complaint must be dismissed as to them. In addition, Hultner and Witt argued that KHALP's "aiding and abetting claim" must be dismissed for failure to state a claim.

### c. *the Lawyers' motion to dismiss or for summary judgment*

On May 6, 2003, Jones Day filed a motion to dismiss, for summary judgment, or, in the alternative, to stay the proceedings in which Goodsill joined on May 21, 2003. Jones Day's motion was based on five independent grounds: (1) KRC's prosecution of the instant action in the name of KHALP is *ultra vires*; (2) collateral estoppel; (3) litigation immunity; (4) waiver; and (5) failure to join indispensable parties.[15] Specifically, Jones Day asserted that the present action "is one by KRC to assert its rights, not the rights of KHALP[.]" Jones Day argued that KRC could not prosecute the instant action in KHALP's name because (1) the Partnership Agreement does not permit KRC to sue third parties (as the Lawyers) in KHALP's name and (2) KRC did not comply with applicable procedural requirements for bringing this action as a derivative action. Jones Day's arguments with respect to collateral estoppel, litigation immunity, and waiver mirrored those that were asserted in Jones Day's motion to dismiss or for summary judgment in the KRC Appeal. *See supra* discussion at Part I.B.1.b.

A hearing was held on Hultner and Witt's motion to dismiss and Jones Day's motion to dismiss or for summary judgment on October 15, 2003 (in conjunction with Jones Day's motion to dismiss or for summary judgment in the KRC Appeal). At the conclusion of the hearing, the circuit court stated that it was persuaded by the arguments and authorities cited in the KHALP defendants' respective motions and, thus, orally granted the motions. On December 1, 2003, the circuit court entered a separate written order granting the motions and Goodsill's joinder therein.

### d. *the KHALP defendants' motions for attorneys' fees and costs*

As prevailing parties on their respective motions to dismiss or for summary judgment, the KHALP defendants separately moved for an award of attorneys' fees and costs against KRC, because, according to the KHALP defendants, KRC initiated and controlled the prosecution of the KHALP Appeal. Hultner and Witt moved for an award of fees and costs pursuant to HRCP Rule 54(d) and HRS

---

15. Similar to the KRC Appeal, counsel for Jones Day stated that the instant motion was a summary judgment motion as well as a dismissal motion. Specifically, as previously mentioned, counsel stated that the instant motion was a dismissal motion on the collateral estoppel issue and was a summary judgment motion "on al other issues."

Moreover, the Lawyers state on appeal that they do not advance the contention that KHALP's failure to join indispensable parties is a basis to affirm the circuit court's decision in their favor.

§§ 607–9 (1993) (relating to actual disbursements that may be allowed in taxation of costs) and 607–14 on December 17, 2003. Hultner and Witt sought fees in the amount of $296,673.98 and costs in the amount of $16,731.76, for a total request of $313,405.74. On the same day, the Lawyers moved for an award of fees pursuant to HRCP Rule 54(d) and HRS § 607–14. Jones Day sought fees in the amount of $203,056.71, and Goodsill sought fees in the amount of $48,666.73.

On March 9, 2004, KHALP filed separate memoranda in opposition to the Lawyers' and Hultner and Witt's motions for fees. KHALP argued in both memoranda that, if the circuit court "is inclined to consider the [motions for fees], KHALP urges [the circuit c]ourt to allow KRC an adequate opportunity to respond to the allegations contained [in the motions for fees]," and attached, as an exhibit to both memoranda, KRC's memorandum in opposition to the Lawyers' motion for fees filed in the KRC Appeal.

A hearing was held on the KHALP defendants' motion for fees on March 17, 2004 (in conjunction with the Lawyers' motion for fees filed in the KRC Appeal). As previously mentioned, the circuit court stated at the conclusion of the hearing that it was taking the motions under advisement. On June 3, 2004, the circuit court entered two separate orders granting the Lawyers' and Hultner and Witt's motions for fees and costs in their entirety. Both orders contained the following findings:

(1) [KHALP] is a limited partnership comprised of only two general partners, [KRC] and [MOHUSA].

(2) Pursuant to the [P]artnership [A]greement between KRC and MOHUSA, KRC is specifically authorized to exercise the rights and privileges of [KHALP] under, pursuant to or otherwise with respect to the Management Agreement[s] and [KHALP]'s dealing with [the] Mandarin [Managers].

(3) KRC asserted the claims of [KHALP] in this case.

(4) The complaint entitled [*KHALP v. Jones Day, i.e.,* the KHALP Appeal,] was brought by KRC in the name of [KHALP] to recover for purported injury to KHALP[.]

(5) The allegations in the complaint [in the KHALP Appeal]—and KHALP's concessions that it is not the real party in interest—but takes its direction from KRC in this lawsuit—make clear that KRC is a party bringing the lawsuit in the name of [KHALP].

(6) As a result, KRC was and is a party to the instant lawsuit because it brought the action in the name of KHALP.

(7) KRC instigated, controlled, and directed the lawsuit in the name of [KHALP] and had notice of the lawsuit.

. . . .

(13) Under [HRS] § 607–14, the instant action is in the nature of assumpsit.

The circuit court's order granting Hultner and Witt's motion for fees and costs stated in relevant part:

(11) KRC had a full and fair opportunity to respond to [Hultner and Witt's m]otion for [fees and costs] in [the KHALP Appeal] by virtue of its [m]emorandum [i]n [o]pposition being attached as [an e]xhibit ... to KHALP's [m]emorandum [i]n [o]pposition[.]

(12) As the party that initiated the instant lawsuit in the name of [KHALP], KRC is liable for [Hultner's and Witt's] attorneys' fees and costs.

The circuit court awarded the requested fees and costs in the amount of $313,405.74 to Hultner and Witt against KRC. Likewise, the circuit court's order granting the Lawyers' motion for fees stated in relevant part:

(11) KRC had a full and fair opportunity to respond to [the Lawyers' m]otion [for fees] by virtue of its [m]emorandum [i]n [o]pposition being attached as [an e]xhibit to KHALP's [m]emorandum [i]n [o]pposition[.]

(12) As the party that initiated the instant lawsuit in the name of [KHALP], KRC is liable for the Lawyers['] ... fees and costs.[ 16]

---

**16.** Although the order stated that KRC is liable for the Lawyers' fees *and* costs, the Lawyers did not move for an award of costs.

The circuit court awarded the requested fees in the amount of $203,056.71 to Jones Day and $48,666.73 to Goodsill.

A separate final judgment in favor of the KHALP defendants was entered on June 3, 2004. KHALP and KRC timely filed their separate notices of appeal on July 2, 2004.

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss

■ "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief." *Dunlea v. Dappen*, 83 Hawai'i 28, 32, 924 P.2d 196, 200 (1996) (citations omitted), *overruled on other grounds by Hac v. Univ. of Hawai'i*, 102 Hawai'i 92, 73 P.3d 46 (2003). This court must, therefore, "view a plaintiff's complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under any alternate theory." *Id.* (citation omitted). Consequently, "in reviewing the circuit court's order dismissing the plaintiffs' complaint in this case, our consideration is strictly limited to the allegations of the complaint, and we must deem those allegations to be true." *Id.* (citation omitted).

### B. Motion for Summary Judgment

■ This court reviews the circuit court's grant of summary judgment *de novo*. *O'ahu Transit Servs., Inc. v. Northfield Ins. Co.*, 107 Hawai'i 231, 234, 112 P.3d 717, 720 (2005). The standard for granting a motion for summary judgment is well settled:

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In oth-

er words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Price v. AIG Hawai'i Ins. Co.*, 107 Hawai'i 106, 110, 111 P.3d 1, 5 (citation omitted) (brackets in original) (2005).

### C. Motion for Attorneys' Fees and Costs

■ The circuit court's grant or denial of attorneys' fees and costs is reviewed under the abuse of discretion standard. *Id.*

## III. DISCUSSION

As previously stated, the circuit court granted the Lawyers' motion to dismiss or for summary judgment against KRC in the KRC Appeal. The circuit court granted the Lawyers' motion to dismiss or for summary judgment and Hultner and Witt's motion to dismiss against KHALP in the KHALP Appeal. The issues common to both appeals pertaining to the claims asserted against the Lawyers include the applicability of the defenses of litigation immunity, collateral estoppel, and waiver. We, therefore, first examine whether the defense of litigation immunity is applicable to the instant action.

### A. Litigation Immunity

■ KRC and KHALP contend that the circuit court erred in determining that litigation immunity precluded the instant action with respect to the Lawyers. KRC argues that litigation immunity "applies only to claims for negligence, not to intentional torts such as IICR and IIPEA, which are the claims KRC asserted in its [first amended complaint]." (Emphases omitted.) Specifically, KRC claims that,

[i]n drawing the line between negligence and intentional torts, courts have recognized that, in contrast to mere negligence, intentional torts are outside the scope of an attorney's legitimate representation and involve conduct, not mere advice....

In this case, KRC indisputably alleged the intentional torts of IICR and IIPEA against the [Lawyers] in its [first amended complaint]. The underlying factual allegations supporting these claims centered on

the [Lawyers'] active conduct (as opposed to mere advice) in taking control of and regulating KRC's inspection of KHALP's books and records. The [first amended complaint] also alleged that [the Lawyers] acted outside the scope of their representation of MOHUSA and with an improper purpose insofar as their purpose was to benefit the Mandarin Managers at the expense of and with the purpose of harming KRC and KHALP. [¶ 26 of KRC's first amended complaint].

(Some citations omitted.) KHALP agrees with KRC that "attorneys are not privileged from suit for intentional torts." (Capital letters altered.) KHALP presents the additional argument that, because the Lawyers' alleged misconduct "did not occur *in* litigation[,]" (emphasis in original), the litigation privilege is "unavailable here."

The Lawyers, however, contend that "[i]t is well settled that an attorney who represents a client in litigation proceedings cannot be held liable to his client's litigation adversary based on the attorney's conduct of the litigation, absent proof of malicious prosecution, abuse of process, fraud[,] or malice." (Citations omitted.) The Lawyers assert that "[t]he only torts that have been recognized in Hawai'i for a lawyer's conduct in representing a client in civil litigation are the torts of malicious prosecution and abuse of process and fraud." (Citations omitted.) The Lawyers argue that,

> under the foregoing principles, [the Lawyers'] conduct was protected by the litigation immunity rule as a matter of law.

MOHUSA and its affiliates[, *i.e.*, the Mandarin Managers,] retained [the Lawyers] to openly represent them in adversarial arbitration proceedings instituted against them by [KRC/KHALP]. As [KRC/KHALP] concedes, the document production upon which this entire lawsuit is based was a form of discovery in aid of [KRC's/KHALP's] arbitration claims. The . . . litigation immunity rule clearly permitted [the Lawyers] to represent [MOHUSA and the Mandarin Managers]—*i.e.*, the parties that retained them—in connection with that document discovery demand, and to assist [MOHUSA and the Mandarin Managers] to resist the demand, where they deemed it appropriate to do so. That is all that [the Lawyers] did. [KRC/KHALP], moreover, do[ ] not—and cannot—contend that [the Lawyers'] resistance to [their] document demand constituted either malicious prosecution, abuse of process, fraud or malice. Because [KRC's and KHALP's complaints are] based entirely on [the Lawyers'] assistance to their clients in connection with the litigation proceedings against them, the circuit court correctly recognized that the litigation immunity rule bars all of [KRC's/KHALP's] claims.

(Citations omitted.)

The parties appear to agree that there are no Hawai'i appellate cases that specifically discuss whether litigation attorneys can be held liable to their client's adversary for intentional interference with contractual relations [17] or prospective economic advantage [18]

---

17. In *Meridian Mortgage, Inc. v. First Hawaiian Bank*, 109 Hawai'i 35, 122 P.3d 1133 (App.), *cert. denied*, 109 Hawai'i 294, 125 P.3d 1059 (2005), the Intermediate Court of Appeals (ICA) reiterated the requisite elements of intentional or tortious interference with contractual relations:

> (1) a contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party to breach the contract; (4) the absence of justification on the defendant's part; (5) the subsequent breach of the contract by the third party; and (6) damages to the plaintiff.

*Id.* at 44, 122 P.3d 1133, 122 P.3d at 1142 (quoting *Weinberg v. Mauch*, 78 Hawai'i 40, 50, 890 P.2d 277, 287 (1995)) (emphasis omitted) (format altered).

18. In *Robert's Hawai'i School Bus, Inc. v. Laupahoehoe Transportation Co.*, 91 Hawai'i 224, 982 P.2d 853 (1999), *superseded by statute on other grounds as stated in Hawai'i Med. Ass'n v. Hawai'i Med. Serv. Ass'n*, 113 Hawai'i 77, 148 P.3d 1179 (2006), this court set forth the following elements constituting the tort of intentional or tortious interference with prospective business advantage:

> (1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) a purposeful intent to interfere with the relationship, advantage,

for conduct occurring during the course of the attorney's representation of his or her client. Generally, "[t]he scope of any privilege is based upon policy considerations." *Matsuura v. E.I. du Pont de Nemours & Co.*, 102 Hawai'i 149, 155, 73 P.3d 687, 693 (2003) (citations omitted). In *Matsuura*, this court stated that the "interrelated policies associated with the litigation privilege" or litigation immunity include:

> (1) promoting the candid, objective, and undistorted disclosure of evidence; (2) placing the burden of testing the evidence upon the litigants during trial; (3) avoiding the chilling effect resulting from the threat of subsequent litigation; (4) reinforcing the finality of judgments; (5) limiting collateral attacks upon judgments; (6) promoting zealous advocacy; (7) discouraging abusive litigation practices; and (8) encouraging settlement.

*Id.*

In *Clark v. Druckman*, 218 W.Va. 427, 624 S.E.2d 864 (2005), the West Virginia Supreme Court of Appeals applied the foregoing policies discussed by this court in *Matsuura* and concluded that it saw "no reason to distinguish between *communications* made during the litigation process and *conduct* occurring during the litigation process." *Id.* at 870 (emphases in original). In *Clark*, the court was asked to decide the following certified question from the Circuit Court of Cabell County:

> Is a party to a civil action barred, by virtue of the litigation privilege, from bringing claims for civil damages against the opposing party's attorney if the alleged act of the attorney in the course of the attorney's representation of the opposing party is conduct and not a written or oral statement which arose in the civil action and which has some relationship to the civil action?

*Id.* at 871. In the underlying case, the plaintiff had asserted the following claims against the defendant-lawyers: (1) negligence; (2) intentional infliction of emotional distress; (3) tortious interference with the plaintiff doctor's business relationship with her insurance carrier; and (4) malicious prosecution. *Id.* at 866. In its analysis, the *Clark* court stated:

> As recognized by the Florida Supreme Court:
>
>> [A]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior ..., so long as the act has some relation to the proceeding. The rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding. Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.
>
> *Levin, Middlebrooks, Mabie, Thomas Mayes & Mitchell, P.A.[] v. United States Fire Insurance Company*, 639 So.2d 606, 608 (Fla.1994). *See also Jackson v. BellSouth Telecommunications*, 372 F.3d 1250 1274 (11th Cir.2004) (quoting *Levin* ).

In *Collins [v. Red Roof Inns, Inc.*, [211 W.Va. 458,] 566 S.E.2d 595 (2002) ], we recognized that absolute privileges, such as the litigation privilege, should only be permitted in limited circumstances. *Collins* ... 566 S.E.2d at 598. Thus, we do not believe that a litigation privilege should apply to bar liability of an attorney in all circumstances. In *Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver N.A.*, 892 P.2d 230, 235 (Colo.1995), the Colorado Supreme [C]ourt noted that "an attorney is not liable to a non-client absent a finding of fraud or malicious conduct by the attorney." *See also Baglini v. Lauletta*, ... [338 N.J.Super. 282,] 768 A.2d 825 833–34 (2001) ("The one tort excepted from

*Id.* at 258, 982 P.2d at 887 (citations and footnote omitted).

---

or expectancy; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages.

the reach of the litigation privilege is malicious prosecution, or malicious use of process."). We believe such exceptions to an absolute litigation privilege arising from conduct occurring during the litigation process are reasonable accommodations which preserve an attorney's duty of zealous advocacy while providing a deterrent to intentional conduct which is unrelated to legitimate litigation tactics and which harms an opposing party. As recently noted by a California court:

> [A] fraud claim against a lawyer is no different from a fraud claim against anyone else. If an attorney commits actual fraud in his dealings with a third party, the fact he did so in the capacity of attorney for a client does not relieve him of liability. While an attorney's professional duty of care extends only to his own client and intended beneficiaries of his legal work, the limitations on liability for negligence do not apply to liability for fraud.

*Vega v. Jones, Day, Reavis & Pogue,* ... [121 Cal.App.4th 282,] 17 Cal.Rptr.3d 26, 31–35 (2004) (internal citations and quotations omitted).

*Id.* at 870 (bold emphases added) (some formatting altered); *see also Myers v. Cohen,* 5 Haw.App. 232, 236 & 243, 687 P.2d 6, 11 & 14–15 (1984) (stating that "an attorney may be liable for malicious prosecution if he acts for an improper purpose" and that an "attorney may also be sued and held personally liable if he maliciously participates in [an] abuse of process") (citations omitted), *overruled on other grounds by Myers v. Cohen,* 67 Haw. 389, 688 P.2d 1145 (1984); *cf. Matsuura,* 102 Hawai'i at 162, 73 P.3d at 700 (concluding that "a party is not immune from liability for civil damages based upon that party's fraud engaged in during prior litigation proceedings"). Based on the foregoing discussion, the *Clark* court stated:

> [W]e can find no reasonable justification for distinguishing conduct from communications for the purposes of the litigation privilege. However, we also recognize the need for limited exceptions from application of the absolute litigation privilege for certain intentional actions. Accordingly,

we now hold that the litigation privilege is generally applicable to bar a civil litigant's claim for civil damages against an opposing party's attorney *if the alleged act of the attorney occurs in the course of the attorney's representation of an opposing party and is conduct related to the civil action.*
624 S.E.2d at 871 (footnote omitted) (emphasis added).

In *Schott v. Glover,* 109 Ill.App.3d 230, 64 Ill.Dec. 824, 440 N.E.2d 376 (1982), the Illinois Appellate Court (the court) specifically addressed whether claims of IICR and IIPEA could be stated against an adversary's attorney. The court stated that:

> A plaintiff can state a cause of action for tortious interference with a contract against a third party who is conditionally privileged *if the plaintiff can set forth factual allegations from which actual malice may reasonably be said to exist.* Such allegations, however, would *necessarily include a desire to harm, which is independent of and unrelated to the attorney's desire to protect his client.*

*Id.* at 380 (citations omitted) (emphases added); *see Fraidin v. Weitzman,* 93 Md. App. 168, 611 A.2d 1046, 1080 (1992) (stating that, "[t]o remove the qualified privilege, the attorney must possess a desire to harm which is independent of the desire to protect his client. This would constitute actual malice and therefore substantiate a tortious interference with contract claim") (citation omitted). The court discussed the seemingly conflicting purposes behind recognizing the tort of tortious interference with a contract and the conditional privilege accorded to an attorney when advising his client, stating that:

> The purpose of imposing liability on persons who interfere with the contractual relationships of others is to protect one's interest in such relationships against forms of interference which, on balance, the law finds repugnant. The question of justification therefore rests on whether protection of the contractual interest merits prohibition of the particular conduct which interferes with that interest. Under certain circumstances[,] a third party may be privileged purposely to bring about a breach of

contract between other parties. This privilege occurs where the third party acts to protect a conflicting interest which is considered to be of equal or greater value than that accorded the contractual rights involved.

The fiduciary duty owed by an attorney to his client is such an interest[.] Although incorrect advice as to a client's contractual obligations might cause that client to become liable to a third party in contract, it does not follow that the attorney would also be liable to that party. To impose such liability on an attorney would have the undesirable effect of creating a duty to third parties which would take precedence over an attorney's fiduciary duty to his client.

440 N.E.2d at 379 (citations omitted). With respect to the tort of tortious interference with a valid business relationship and expectancy, the court stated that:

Although an individual has a general duty not to interfere in the business affairs of another, the question whether such interference amounts to tortious conduct requires a balancing of societal values. The right to engage in a business relationship is accorded *less* protection than the right to receive the benefits of a contract. Consequently, interference in the business affairs of another by an outsider is even more likely to be privileged where no contract is involved.

*Id.* at 380 (citation omitted) (emphasis added). Inasmuch as the plaintiffs' complaint failed to allege facts that would constitute actual malice with respect to the plaintiffs' tortious interference claims, the *Schott* court held that the trial court correctly dismissed the plaintiffs' complaint for failure to state a claim in light of the defendant-attorney's conditional privilege. *Id.* at 380.

Other jurisdictions have similarly held that an attorney is afforded a conditional or qualified privilege when claims of IICR and IIPEA are asserted against him by his client's adversary. The United States Court of Appeals for the Eighth Circuit, applying Minnesota law, held that "an attorney who acts within the scope of the attorney-client relationship will not be liable to third persons for

actions arising out of his professional relationship unless the attorney exceeds the scope of his employment or acts for personal gain." *Maness v. Star–Kist Foods, Inc.,* 7 F.3d 704, 709 (8th Cir.1993) (citations omitted). The *Maness* court further stated that the conditional privilege "is lost only when the agent[, *i.e.,* the attorney,] acts with bad faith, personal ill-will, malice, or a deliberate intent to harm the [third party]." *Id.* (concluding that the district court did not err in entering summary judgment against the plaintiff on the plaintiff's tortious interference with contract claim because the record reflected "no evidence" that the defendant attorney "acted for personal gain or with ill-will toward" the plaintiff) (citation omitted); *see Fraidin,* 611 A.2d at 1080 (stating that, "while an attorney is acting within the scope of his employment, he may not commit fraud or collusion, or a malicious or tortious act, even if doing so is for the benefit of the client. Such actions are beyond the qualified privilege[.]") (Citation omitted.); *Macke Laundry Serv. Ltd. P'ship v. Jetz Serv. Co.,* 931 S.W.2d 166, 182 (Mo.Ct.App.1996) (recognizing "a privilege for attorneys, when acting within the scope of the attorney-client relationship, to advise and to act for a client even though that advice, if wrong, may cause a client to tortiously interfere with another's business relationship or expectancy, so long as the attorney does not employ wrongful means and acts with good faith to protect the interests of the client and not for the attorney's self interest"); *Burger v. Brookhaven Med. Arts Bldg.,* 131 A.D.2d 622, 624, 516 N.Y.S.2d 705 (N.Y.App.Div.1987) (stating that "an attorney is not liable for inducing his principal[, *i.e.,* his client,] to breach a contract with a third person, at least where he is acting on behalf of his principal within the scope of his authority. Absent a showing of fraud or collusion, or of a malicious or tortious act, an attorney is not liable to third parties for purported injuries caused by services performed on behalf of a client or advice offered to that client") (citations omitted).

Moreover, the Oregon Supreme Court has recently held that an attorney is afforded a conditional or qualified privilege when a third

party seeks to hold him liable for substantially assisting and/or aiding and abetting in a client's breach of fiduciary duty. In *Reynolds v. Schrock*, 341 Or. 338, 142 P.3d 1062 (2006) (en banc), the Oregon Supreme Court (the court) held that, "for a third party to hold a lawyer liable for substantially assisting in a client's breach of fiduciary duty, the third party must prove that the lawyer acted outside the scope of the lawyer-client relationship." *Id.* at 1069. Specifically, the court stated:

> [T]his court's earlier decisions hold that a person may be jointly liable with another for substantially assisting in the other's breach of fiduciary duty owed to a third party, if the person knows that the other's conduct constitutes a breach of that fiduciary duty. Our tort case law also makes clear, however, that, if a person's conduct as an agent or on behalf of another comes within the scope of a privilege, then the person is not liable to the third party. In this case, we extend those well-recognized principles to a context that we have not previously considered and hold that a lawyer acting on behalf of a client and within the scope of the lawyer-client relationship is protected by such a privilege and is not liable for assisting the client in conduct that breaches the client's fiduciary duty to a third party.

*Id.* The court also expressly noted that its approach was similar to that adopted by the Illinois Appellate Court in *Schott. Id.* at 1071 n. 14. *See* discussion *supra.*

■ As previously mentioned, KRC's amended complaint set forth the following claims for relief: (1) IICR; (2) IIPEA; and (3) unfair methods of competition. On appeal, KHALP alleges that it set forth the following claims for relief in its complaint against the Lawyers: (1) "tortious inducement of breach of fiduciary duty"; [19] (2) tortious interference with contractual relations; and (3) unfair methods of competition.[20] Contrary to KRC's assertion, however, both KRC and KHALP failed to allege that the Lawyers were acting *outside* the scope of their lawyer-client relationship with MOHU-SA and the Mandarin Managers. Moreover, KRC and KHALP also failed to "set forth factual allegations from which actual malice may reasonably be said to exist." *Schott,* 64 Ill.Dec. 824, 440 N.E.2d at 380 (citation omitted); *see also Fraidin,* 611 A.2d at 1080. As such, there are no allegations that indicate that the Lawyers "possess[ed] a desire to harm which is independent of the desire to protect [their] client[s]." *Fraidin,* 611 A.2d at 1080. Furthermore, the complaints are devoid of any allegations that the Lawyers "acted for personal gain or with ill-will toward[s]" KRC and KHALP. *Maness,* 7 F.3d at 709. The Lawyers' conduct at issue in the instant case, that is, the management of the inspection and review process of KHALP's books and records, therefore, falls within the purview of the litigation privilege as set forth above.

■ Nonetheless, as previously mentioned, KHALP contends that, because the Lawyers' alleged misconduct "did not occur *in* litigation[,]" (emphasis in original), the litigation privilege is "unavailable here." Although not entirely clear from KHALP's opening brief, it appears that KHALP's contention that the litigation privilege is "unavailable" is based upon the fact that the Lawyers' conduct at issue occurred during

---

19. On appeal, KHALP does not identify or explain the elements constituting its self-described claim of "tortious inducement of breach of fiduciary duty" against the Lawyers. Indeed, KHALP does not present any argument on appeal that this court should recognize such a tort. Consequently, we decline to consider whether to recognize such a new claim for relief in light of the absence of any argument to do so. *See* HRAP Rule 28(b)(7) (2005) ("Points not argued may be deemed waived.") As discussed more fully *infra*, we similarly decline to consider whether to recognize such a claim against Hultner and Witt. *Id.*

20. Inasmuch as KRC and KHALP fail to address their unfair methods of competition claims against the Lawyers on appeal, it appears that such claims have been abandoned. Thus, KRC's and KHALP's claim of unfair methods of competition against the Lawyers is deemed waived. *See* HRAP Rule 28(b)(7). As discussed more fully *infra*, KHALP's unfair methods of competition claim against Hultner and Witt is likewise waived. *Id.*

the period that the Partner Arbitration and the Managers Arbitrations were stayed.

This court has previously recognized that arbitration is "a quasi-judicial proceeding[.]" *Coral Kingdom of Kaneohe, Ltd. v. Harter*, 65 Haw. 247, 249, 649 P.2d 1159, 1161 (1982). Other jurisdictions have held in a related context that, because arbitration proceedings are quasi-judicial in nature, participants are absolutely immune from suit for statements made during arbitration proceedings. *See Rolon v. Henneman*, 389 F.Supp.2d 517, 520 (S.D.N.Y.2005) (stating that "the law expressly recognizes that statements made during quasi-judicial proceedings, like those made during formal judicial proceedings, are entitled to absolute immunity") (internal quotation marks, brackets, and citation omitted); *Preston v. O'Rourke*, 74 Conn.App. 301, 811 A.2d 753, 760 (2002) (stating that "parties to or witnesses before judicial or quasi-judicial proceedings [such as arbitration proceedings] are entitled to absolute immunity for the content of statements made therein") (citation and internal quotation marks omitted); *Bushell v. Caterpillar, Inc.*, 291 Ill.App.3d 559, 225 Ill.Dec. 623, 683 N.E.2d 1286, 1289 (1997) (stating that "[a] majority of jurisdictions ... hold that absolute immunity applies to grievance and arbitration hearings") (citation omitted); *W. Mass. Blasting Corp. v. Metro. Prop. & Cas. Ins. Co.*, 783 A.2d 398, 403 (R.I.2001) (stating that quasi-judicial proceedings such as arbitration proceedings are "judicial proceedings," and, thus, statements in arbitration proceedings are privileged against suits for defamation).

Here, as previously mentioned, the parties agreed in writing to stay the Partner Arbitration and the Managers Arbitrations on February 2, 2001. Ten days later, KRC—on behalf of itself and KHALP—sought MOHUSA's permission to inspect and review KHALP's books and records. According to KRC, such inspection was necessary in order to prepare for and substantiate the claims asserted in the Managers Arbitrations. Although the inspection and review process of KHALP's books and records occurred during the stay, it is undisputed that such inspection would not have occurred but for the initiation of arbitration proceedings by KRC and KHALP against MOHUSA and the Mandarin Managers. Moreover, any o' the parties could give thirty days' notice to the other of termination of the stay, thereby resuming the arbitration proceedings. Consequently, we believe that the Lawyers' conduct at issue in this case occurred during a quasi-judicial proceeding, notwithstanding the fact that the proceeding was temporarily stayed. We, therefore, hold that the litigation privilege is applicable to the instant appeals.[21] Such an interpretation "comports with this court's proclaimed public policy ... to encourage arbitration as a means of settling differences and thereby avoiding litigation [in the courts]." *Fireman's Fund Ins. Co. v. AIG Hawai'i Ins. Co.*, 109 Hawai'i 343, 353, 126 P.3d 386, 396 (2006) (internal quotation marks and citations omitted) (ellipsis in original). Accordingly, we also hold that the circuit court did not err in granting dismissal or summary judgment in favor of the Lawyers in both the KRC Appeal and the

---

21. KHALP also appears to raise on appeal that the Lawyers should be judicially estopped from taking the position that their conduct at issue took place *in* litigation. The Lawyers, however, point out—and KHALP concedes in its reply brief—that "KHALP did not raise its judicial estoppel argument in the circuit court." Generally, "failure to raise or properly reserve issues at the trial level would be deemed waived." *Enoka v. AIG Hawai'i Ins. Co.*, 109 Hawai'i 537, 546, 128 P.3d 850, 859 (2006) (internal quotation marks and citation omitted). Inasmuch as KHALP did not raise its judicial estoppel argument at the circuit court level, we decline to address such argument made for the first time on appeal. Nevertheless, we note that "this court is vested with the discretion to, *sua sponte*, invoke the construct of judicial estoppel." *Lee v. Puamana Cmty. Ass'n*, 109 Hawai'i 561, 574 n. 12, 128 P.3d 874, 887 n. 12 (2006) (citations omitted). In *Lee*, this court relied on, *inter alia* *Kolodge v. Boyd*, 88 Cal.App.4th 349, 105 Cal. Rptr.2d 749 (2001), for the foregoing proposition expressed in *Lee*. In *Kolodge*, the California Court of Appeals stated that "judicial estoppel is warranted only upon a clear showing that inconsistency and unfairness would otherwise result." *Id.* at 770. Such "clear showing" has not been made by KHALP. Thus, we decline to *sua sponte* invoke the construct of judicial estoppel. *See Lee*, 109 Hawai'i at 574 n. 12, 128 P.3d at 887 n. 12 (declining to invoke judicial estoppel *sua sponte* "based upon the record provided") (citations omitted).

KHALP Appeal on the basis of the applicability of the litigation privilege.[22]

Inasmuch as we have held that the litigation privilege is applicable to preclude the claims asserted by KRC and KHALP against the Lawyers, we need not address the remainder of the Lawyers' defenses raised in their motions to dismiss or for summary judgment in the KRC Appeal and KHALP Appeal. Accordingly, we next address whether KHALP's claims against Hultner and Witt were incorrectly dismissed by the circuit court.

## B. *KHALP's Claims Against Hultner and Witt*

■ KHALP contends that the circuit court erred in dismissing its complaint as against Hultner and Witt. As previously noted, *see supra* note 14, KHALP maintains on appeal that the claims asserted in its complaint include: (1) tortious interference with contractual relations; (2) "tortious inducement of breach of fiduciary duty," *see supra* note 19; and (3) unfair methods of competition, *see supra* note 20. KHALP argues that "[i]t is no defense that the tort[s] may have been committed on behalf of the corporate entity by the agent acting in a representative capacity."

Preliminarily, Hultner and Witt point out that KHALP's complaint "does not allege any specific involvement of Hultner and Witt in the document inspection process as the basis for [KHALP's] claim[s]." Nevertheless, Hultner and Witt contend that KHALP's claims fail as a matter of law because they cannot be held liable for inducing or causing the entities that they represent to breach fiduciary or contractual duties. Specifically, Hultner and Witt argue that:

[KHALP] has failed to allege a legal basis for [its] new claims. Hultner and Witt are alleged to be directors of MOHUSA, officers of [one of the entities consisting of the Mandarin Managers], and to have acted on behalf of [one of the entities consisting of the Mandarin Managers], and *all the allegations in [KHALP's c]omplaint relate to actions allegedly taken within their representative capacities*—there is no allegation that either acted for his own personal gain. Hultner and Witt thus are legally incapable of inducing or causing the entities in which they represent to breach fiduciary or contractual duties.

Similarly, "[tortious] interference with contractual relations" also requires there to be a third-party, separate and apart from the principal-agent relationship. [KHALP's] attempt to re-characterize its claims on appeal does not avoid the well-settled rule that an agent cannot conspire with its principal to commit a tort.

(Citations omitted.) (Emphasis in original.) Moreover, Hultner and Witt allege that KHALP's assertion that they committed the tort of tortious inducement of breach of fiduciary duty "must fail because Hawai'i does not recognize this novel cause of action." Lastly, Hultner and Witt maintain that "[i]t appears [KHALP] has abandoned any claim for unfair competition as the [o]pening [b]rief fails to address the claim."

Other jurisdictions have recognized that "employees or directors of a corporation cannot be held personally liable for tortious interference with a contractual or business relationship of their own company unless such

---

**22.** KRC also raises on appeal that the litigation privilege is not applicable because (1) the Lawyers owed fiduciary duties to KRC and (2) KRC and KHALP were not truly adversarial to MOHUSA. Specifically, with respect to its latter contention, KRC argues that, "but for [the Lawyers'] intentional and unjustified interference with MOHUSA's fiduciary obligations to KRC and KHALP, MOHUSA and KRC would not have been adversarial." KRC, however, does not provide any authority to support its former contention that, "[b]y virtue of [the Lawyers] actively carrying out MOHUSA's Administrative Partner responsibilities in connection with KRC's inspec-

tion of KHALP's books and records, the [Lawyers] were acting as attorneys in fact for both [KHALP] and MOHUSA, and therefore owed fiduciary duties to [KHALP] and its partners, including KRC." KRC's argument that it and KHALP were not truly adversarial to MOHUSA is likewise without merit inasmuch as KRC commenced the Partner Arbitration against MOHUSA in order to initially pursue it claims that MOHUSA breached certain duties by, *inter alia*, failing to investigate and prosecute claims of mismanagement against the Mandarin Managers, *prior to* the Lawyers' involvement that gave rise to the instant appeals.

interference is caused by actions taken outside the scope of their employment." *In re Verestar, Inc.*, 343 B.R. 444, 484 (Bkrtcy. S.D.N.Y.2006) (applying Delaware law) (citations omitted); *see Insituform Techs., Inc. v. Reynolds, Inc.*, 398 F.Supp.2d 1058, 1064 (E.D.Mo.2005) ("A corporate officer, acting within his or her authority, is privileged to induce a breach of a corporate contract provided that he or she uses no improper means, acts in good faith to protect the corporate interest and does not act out of self interest.") (Internal quotation marks and citation omitted.); *Roselink Investors, LLC v. Shenkman*, 386 F.Supp.2d 209, 228 (S.D.N.Y.2004) (stating that "[a] corporate officer or director generally cannot be liable for tortiously interfering with a contract between the corporation and a third party") (internal quotation marks and citations omitted); *Keith v. Mendus*, 661 N.E.2d 26, 36 (Ind.Ct.App.1996) (stating that "an officer or director of a corporation will not be held independently personally liable for inducing the corporation's breach of its contract, if the officer or director's action is within the scope of his official duties on behalf of the corporation") (citation omitted); *Reed v. Michigan Metro Girl Scout Council*, 201 Mich.App. 10, 506 N.W.2d 231, 233 (1993) (stating that "[i]t is now settled law that corporate agents are not liable for tortious interference with the corporation's contracts unless they acted solely for their own benefit with no benefit to the corporation") (citations omitted).

That an officer or director of a corporation possesses limited immunity from most charges of tortious interference with the corporation's contracts stems from both their role as agents of the corporation and the nature of the tort. A party cannot "interfere" with its own contracts, so the tort itself can be committed only by a third party. In the case of a corporation, the legal entity acts through its directors and officers. Thus, when officers or directors act in their official capacity as agents of the corporation, they act not as individuals but as the corporation itself. In doing so, they are not acting as a third party, but rather as a party to the contract and cannot be personally liable for tortious interference with the contract.

Conversely, when directors or officers act outside the scope of their official capacity, they no longer act as agents of the corporation and therefore act as a third party. Directors and officers who act outside the scope of their official duties therefore can be held personally liable for tortious interference with a contract.

Because the officers and directors of corporations possess some immunity from claims of tortious interference, to state a claim against the officers and directors of a corporation, [the plaintiff] must not only allege the basic elements of tortious interference ..., *he must also allege some interfering act by officers or directors that rests outside their authority as agents of the corporation.*

*Trail v. Boys & Girls Club of Northwest Indiana*, 845 N.E.2d 130, 138–39 (Ind.2006) (citations omitted) (emphasis added); *see also Insituform Techs.*, 398 F.Supp.2d at 1065 n. 2 (noting that, "because an officer or agent of a corporation acting within his or her official capacity is the corporation for purposes of the tort, a corporate officer cannot be held liable for tortiously interfering with the corporation's own contracts") (citation omitted); *Jones v. Lake Park Care Ctr., Inc.*, 569 N.W.2d 369, 377 (Iowa 1997) (same).

In the instant case, KHALP does not allege that Hultner and Witt acted outside the scope of their employment with MOHUSA and the Mandarin Managers. As previously mentioned, KHALP's complaint alleges that:

18. MOHUSA, as Administrative Partner, through Hultner and Witt, purportedly retained [the Lawyers] to assist it in carrying out its duties as Administrative Partner with respect to [KHALP's] books and records, and in responding to [KRC's] request. . . .

19. At the same time, Hultner and Witt were acting on behalf of the Mandarin Managers in connection with the disputes and requested arbitrations between KHALP and the Mandarin Managers.

As pointed out by Hultner and Witt, it appears that "[t]he only allegation of misconduct by Hultner and Witt contained in [KHALP's c]omplaint pertains to an alleged

conspiracy against KRC and KHALP in the retention of [the Lawyers] to participate in responding to KRC's document request." KHALP, however, does not allege that the action of retaining the Lawyers with regard to KRC's document request was outside the scope of Hultner's and Witt's authority as corporate officers and directors of MOHUSA and the Mandarin Managers. Moreover, KHALP fails to allege that, by hiring the Lawyers, Hultner and Witt "acted solely for their own benefit with no benefit to [MOHUSA]." *Reed*, 506 N.W.2d at 233. Consequently, KHALP has failed to state a claim of tortious interference with contractual relations against Hultner and Witt in their individual capacities. *See In re Verestar, Inc.*, 343 B.R. at 484 (holding that, because the plaintiff did not allege that the defendants acted outside the scope of their employment with respect to the plaintiff's tortious interference claims, the plaintiff failed to adequately plead a claim for relief).[23]

■ Furthermore, as previously noted, KHALP does not identify or explain the elements constituting its claim of "tortious inducement of breach of fiduciary duty." *See supra* note 19. In fact, KHALP does not present any argument on appeal that this court should recognize such a novel tort. *Id.* As such, we decline to consider whether to recognize such a new claim for relief in light of the absence of any argument to do so.

■ Lastly, as Hultner and Witt aptly point out, "[i]t appears [KHALP] has abandoned any claim for unfair [methods of] competition as the [o]pening [b]rief fails to address the claim." Inasmuch as KHALP has abandoned its claim of unfair methods of competition against Hultner and Witt on appeal, KHALP's claim is deemed waived. *See* HRAP Rule 28(b)(7). Accordingly, we hold that the circuit court did not err in granting Hultner and Witt's motion to dismiss.

Having held that KHALP (1) failed to state a claim of tortious interference with contractual relations against Hultner and Witt in their individual capacities, (2) did not present any argument on appeal that this court should recognize the tort of tortious inducement of breach of fiduciary duty, and (3) abandoned its claim of unfair methods of competition, we need not address the remainder of Hultner's and Witt's defenses raised in their motion to dismiss in the KHALP Appeal. Accordingly, we next examine whether the defendants in both appeals were entitled to an award of attorneys' fees against KRC.

## C. Attorneys' Fees

■ KRC contends that the circuit court erred in granting fees to (1) the Lawyers in the KRC Appeal and KHALP Appeal and (2) Hultner and Witt in the KHALP Appeal. As previously discussed, the circuit court's orders granting fees and costs to the KHALP defendants were entered against KRC—a non-party to the KHALP Appeal—because, according to the circuit court's disputed finding, KRC "instigated, controlled, and directed the [KHALP Appeal] in the name of KHALP and had notice of the lawsuit." KRC initially contends that it has standing to appeal from the June 3, 2004 final judgment entered in the KHALP Appeal, which judgment refers to the circuit court's orders granting fees and costs to the KHALP defendants against KRC. The KHALP defendants do not contend otherwise with respect to KRC's standing to appeal in the KHALP Appeal.

This court has previously stated that:

Generally, the requirements of standing to appeal are: (1) *the person must first have been a party to the action;* (2) the person seeking modification of the order or judg-

---

**23.** KHALP also asserts that, "[w]here corporate officers or directors participate in tortious conduct, such as tortious interference with contractual relations, they are not shielded by the corporation and will be personally liable." (Citing *Burgess v. Arita*, 5 Haw.App. 581, 704 P.2d 930 (1985).) We note, however, that KHALP's reliance on *Burgess* is misplaced. In *Burgess*, the issue before the ICA was *not* whether a corporate officer or director could be held liable for tor-

tiously interfering *with the corporation's own contracts.* Rather, the issue was whether a corporate officer—acting on behalf of a corporation—could be held liable for tortiously interfering with a contract entered into by third parties. 5 Haw.App. at 593, 704 P.2d at 939. Inasmuch as the factual circumstances in *Burgess* are clearly distinguishable from the facts of the instant case, *Burgess* is not germane to this case.

ment must have had standing to oppose it in the trial court; and (3) such person must be aggrieved by the ruling, *i.e.*, the person must be one who is affected or prejudiced by the appealable order.

*Kepo'o v. Watson,* 87 Hawai'i 91, 95, 952 P.2d 379, 383 (1998) (quoting *Waikiki Malia Hotel, Inc. v. Kinkai Props., Ltd. P'ship,* 75 Haw. 370, 393, 862 P.2d 1048, 1061 (1993)) (emphasis added) (internal quotation marks and brackets omitted). It is "[a] well-settled rule ... that only parties to a lawsuit ... may appeal an adverse judgment." *Stewart Props., Inc. v. Brennan,* 8 Haw.App. 431, 433, 807 P.2d 606, 607 (1991) (citation and internal quotation marks omitted) (second set of ellipses in original). However, "a non-party against whom judgment is entered has standing without having intervened in the [circuit] court action to appeal the [circuit] court's exercise of jurisdiction over him." *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1546 (9th Cir.1990) (citations omitted); *see also Thompson v. Freeman,* 648 F.2d 1144, 1147 n. 5 (8th Cir.1981) (noting that, although the appellant was not a party to the underlying action, it may bring its present appeal "to contest the district court's jurisdiction to bind it to the terms of the court's injunction") (citations omitted); 15A C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure: Jurisdiction and Related Matters* § 3902.1, at 44324 (2006) ("The easiest cases for permitting nonparty appeal are those in which a court order *directly binds the nonparty by name*.") (Footnote omitted.) (Emphasis added.).

In this case, the circuit court's orders granting fees and costs to the KHALP defendants directly bound KRC by name. Such orders were referred to in the final judgment in the KHALP Appeal. Consequently, under the circumstances of this case, we hold that KRC—a non-party to the KHALP Appeal— has standing to appeal the award of attorneys' fees against it without having intervened in the circuit court action. We, therefore, next address whether the circuit court's exercise of jurisdiction over KRC was proper in the KHALP Appeal.

### 1. The Circuit Court's Exercise of Jurisdiction Over KRC in the KHALP Appeal

KRC contends that the circuit court erred in awarding fees and costs to the KHALP defendants against KRC in the KHALP Appeal because the circuit court did not have jurisdiction over KRC to enter such an award against it. Specifically, KRC argues that:

KRC ... was never a party to the action below. It was never served with the complaint or summons. No motions were filed to bring it into the action. It never made an appearance. It did not participate in the proceedings below in any way. I: never had a real opportunity to contest the [circuit] court's assertion of jurisdiction over it. The circuit court[,] therefore[,] had no jurisdiction to enter any orders or judgments against KRC [in the KHALP Appeal].

(Footnote omitted.) KRC maintains that, "[i]f the [KHALP defendants] or the circui, court believed that KRC should be responsible for paying the fees and costs ..., there are well-established means for them to attempt to satisfy the judgment against KRC. Entering a money judgment against KRC in a proceeding to which it was not a party is not one of those means."

The Lawyers, on the other hand, contend that "KRC voluntarily submitted to the circuit court's jurisdiction." (Capital letters altered.) Specifically, the Lawyers argue that:

KRC submitted to the jurisdiction of the circuit court in many ways. First, it filed the [c]omplaint in this action. Second, KRC appeared and argued in opposition to all of [the Lawyers'] motions in [the KHALP Appeal] and in the [KRC Appeal]. KRC's counsel, Mr. [James] Bickerton, appeared and argued at the [consolidated] hearings; and, at KRC's direction, KHALP's nominal lawyer (Mr. [John] Perkin), also appeared and argued. Indeed, Mr. Perkin's office filed as part of its opposition to [the Lawyers'] attorneys' fees motion in [the KHALP Appeal] a copy of KRC's opposition to [the Lawyers'] attorneys' fees motion in the companion case[, *i.e.*, the KRC Appeal].

(Citations to the record omitted.) The Lawyers also argue that, at the consolidated hearing on the fee motions, "KRC's counsel ... declined the circuit court's offer to permit KRC to submit further briefing in opposition to [the Lawyers'] request for an order requiring KRC to pay the fees awarded in the [KHALP Appeal]." Moreover, the Lawyers assert that "the circuit court was not bound by the formal designation of parties in the pleadings" and that "KRC was undeniably the real party in interest[.]" Lastly, the Lawyers maintain that, "[e]ven if KRC w[as] not the real party in interest, its control over the conduct of [the KHALP Appeal] subjected it to an award of attorneys' fees." (Capital letters altered.) Specifically, the Lawyers allege that "a non-party is bound by a judgment where the non-party controlled the proceedings." Hultner and Witt set forth the same arguments made by the Lawyers on appeal.

In response, KRC contends that "there is no question that KRC never made an appearance[ ] because it never invoked the powers of the court for its own purpose." Specifically, KRC claims that:

> [C]ontrary to [the KHALP defendants' assertions], KRC did not "file" the [c]omplaint in this case. KHALP, through its own attorney, filed the [c]omplaint, which asserted KHALP's own substantive legal claims. While KRC did cause KHALP to initiate the lawsuit, it did so on behalf of the [p]artnership and pursuant to the provision in the Partnership Agreement that gave it authority to do so[, *i.e.,* section 10.6.2 [24]]. Moreover, as a fictional entity, a partnership such as KHALP must act through one of its partners.... The mere fact that KRC was the partner that caused [KHALP] to file its own lawsuit to pursue its own substantive legal claims does not amount to an appearance or voluntary submission to the court's jurisdiction.

KRC also argues that it was never served with the KHALP defendants' motions for fees. KRC further reiterates that it "could not be added to the judgment even if it controlled the case." KRC maintains that the KHALP defendants' contention that a non-party is bound by a judgment where the non-party controlled the proceedings is "baseless" inasmuch as such an exception to the general rule that "a judgment cannot be entered against a person over whom the court does not have jurisdiction" "simply does not exist" in the context of this case. KRC asserts that "the main cases [the KHALP defendants] cite in support of their purported exception concern the familiar doctrines of *res judicata* and collateral estoppel[.]"

Generally, "[i]t is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 110, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969) (citing *Hansberry v. Lee,* 311 U.S. 32, 40–41, 61 S.Ct. 115, 85 L.Ed. 22 (1940)); *see Romero v. Star Markets, Ltd.,* 82 Hawai'i 405, 412, 922 P.2d 1018, 1025 (App.1996) (same); *see also Haiku Plantations Ass'n v. Lono,* 56 Haw. 96, 102, 529 P.2d 1, 5 (1974) (stating that, "[i]n order for the decree of the lower court to be binding upon such [absent] persons, they must be made parties to the suit, either as plaintiffs or defendants") (internal quotation marks and citations omitted). Other jurisdictions, however, have recognized exceptions to the aforementioned general rule. One such exception, relied on by the KHALP defendants in the instant case, is that "[i]t has long been the rule that a nonparty who controls the litigation is bound by the judgment. The reason would be that the non-party would have the power to determine what evidence and arguments should be offered in the litigation

---

**24.** As previously noted, section 10.6.2 of the Partnership Agreement, which KRC relies on for the proposition that it had the authority to initiate the KHALP Appeal on behalf of KHALP, provides in relevant part:

> Notwithstanding anything herein to the contrary, [KRC] shall be entitled, without [a]p-

proval of any other [p]artner, to exercise all of the rights and privileges of the owner of the Hotel under, pursuant to or otherwise with respect to the Management Agreement[s] and [KHALP]'s dealings with [MOHUSA] and [its affiliates].

and, if appropriate, the appeal." *Explosives Corp. of Am. v. Garlan Enters. Corp.*, 817 F.2d 894, 906 (1st Cir.1987) (internal quotation marks and citations omitted) [hereinafter, *Explosives Corp.];* *see Montana v. United States*, 440 U.S. 147, 154, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) ("One who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own is as much bound as he would be if he had been a party to the record.") (Internal quotation marks, brackets, citations, and ellipses omitted.). Such an exception, however, is generally applied in the context of collateral estoppel: "[A] non-party may be bound by *a determination in a prior action* if the non-party ... substantially participated in the control of a party's presentation in the adjudication or had an opportunity to do so[.]" *Powers v. United Servs. Auto Ass'n*, 6 P.3d 294, 298 (Alaska 2000) (citation omitted) (emphasis added); *see Mother's Rest., Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1572 (Fed.Cir.1983) (stating that "[f]ederal courts have repeatedly held a non-party may be bound by a judgment if one of the parties *to the earlier suit* is so closely aligned with the non-party's interests as to be its virtual representative") (emphasis added) (citations omitted); Restatement (Second) of Judgments § 39 (1982) ("A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the *determination of issues decided* as though he were a party." (Emphasis added.)).

Here, as previously mentioned, the circuit court determined that non-party KRC was liable for the fees and costs incurred by the KHALP defendants in the KHALP Appeal because KRC "instigated, controlled, and directed the lawsuit in the name of [KHALP] and had notice of the lawsuit."[25] However, such a finding merely supports the argument that KRC should be precluded from re-litigating certain issues that were decided in the KHALP Appeal. The authorities relied on by the KHALP defendants do not support the contention that a non-party controlling the litigation on behalf of the losing party may be held solely liable *in the place of* that party for the fees and costs incurred by the prevailing party in that same litigation. *See Montana*, 440 U.S. at 155, 99 S.Ct. 970 (stating that, "although not a party, the United States plainly had a sufficient 'laboring oar' in the conduct of the [prior] state-court litigation to actuate principles of estoppel") (citations omitted); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1279 (9th Cir.1992)

**25.** The Lawyers on appeal rely on the following testimony by Perkin, KHALP's counsel, during the two-day hearing in the Partner Arbitration to substantiate the circuit court's finding that KRC controlled the litigation in the KHALP Appeal:

Q: [ (It is unclear from the record who was doing the questioning.) ] And to the extent that you [ (Perkin) ] represent [KHALP] in the [c]ircuit [c]ourt action that you filed, [*i.e.*, the KHALP Appeal,] you take direction from which spokesperson or spokespersons from the client?

A: [By Perkin] *Well, I take general direction with regard to the scope of my retention from [KRC].*

....

Q: And have you discussed strategies with Mr. Bickerton and Mr. [Jerrold] Chun [ (KRC's other counsel) ], have you? Litigation strategies?

A: I don't think so.

Q: Did you tell them, sir, that you were planning to file a motion for preliminary injunction?

A: Yes. And indeed, I showed them a copy of it before I filed it.

Q: And they gave you comments on it, did they?

A: I don't believe Mr. Chun—maybe. I don't recall Mr. Chun giving me any comments.

Q: How about Mr. Bickerton?

A: Yeah.

(Emphasis added.) KHALP had filed a motion for preliminary injunction, seeking to "restrain[ ] and enjoin[ ] [the KHALP defendants] from interfering with KHALP's access to its own books and records[.]" The motion was denied by the circuit court, the Honorable Richard Pollack presiding, on June 5, 2003. The denial of the motion is not challenged on appeal.

The Lawyers also point to the following statement made by Perkin during the consolidated hearing on the motions for fees and costs: *"I concede from the beginning of this case that KRC was the one who had, as I understood, the right and power to direct KHALP with regard to these claims."* (Emphasis added.) Thus, contrary to KRC's assertion, we believe that the circuit court's finding that KRC controlled the lawsuit in the KHALP Appeal is not clearly erroneous.

(stating that "[i]t has been held that bond-holders are not necessary parties to and are bound by the decree—even if adverse to their interests—in litigation wherein an indenture trustee under a bond issue is a party and exercises in good faith and without neglect his contractual authority to represent and assert the lien securing the issue") (citation omitted); *Alman v. Danin*, 801 F.2d 1, 4–5 (1st Cir.1986) (holding that incorporators of an inadequately funded corporation were jointly and severally liable for full amount of judgment entered against corporation in an earlier proceeding). The KHALP defendants also rely on *Explosives Corp.* in support of their argument that KRC should be held liable for the fees and costs incurred by the KHALP defendants in the KHALP Appeal. In that case, a subcontractor on a highway project brought a diversity action against the general contractor, alleging breach of contract. 817 F.2d at 895. The general contractor counterclaimed for breach of contract. *Id.* After trial, the subcontractor was found liable to the general contractor in the amount of $2,423,177. *Id.* The general contractor, however, argued that the parent corporation of the subcontractor—a non-party to the case—should be held liable for the damages awarded to the general contractor against the subcontractor. *Id.* at 904. The United States Court of Appeals for the First Circuit (First Circuit) agreed, holding that the parent corporation was liable for the full amount of the judgment against the subcontractor and "must be substituted for [the subcontractor] as the defendant to [the general contractor's] counterclaim[.]" *Id.* at 907. The First Circuit summarized its reasons for such a holding as follows:

> [The parent corporation] from the beginning was the controlling stockholder of [the subcontractor]; it succeeded to [the subcontractor's] interest in the lawsuit; [the parent corporation] became the real party in interest, indeed[,] the only party in interest; [the parent corporation] financed and controlled the litigation; and

[the parent corporation] is bound under the contract between [the subcontractor] and [the general contractor] as [the subcontractor's] successor and a holding company of [the subcontractor].

*Id.* The factual circumstances in *Explosives Corp.*, however, are clearly distinguishable from this case. Specifically, KRC is not the "controlling stockholder" of KHALP; it did not "succeed" to KHALP's interest in the KHALP appeal. There is no indication in the record that KRC financed the KHALP Appeal, and, as discussed more fully *infra*, KRC did not become the real party in interest in the KHALP Appeal. Consequently, we believe that the KHALP defendants' reliance on *Explosives Corp.* is misplaced.

Moreover, the KHALP defendants' contention that KRC was "undeniably" the real party in interest in the KHALP Appeal and that, therefore, it should be held liable for the fees and costs incurred by the KHALP defendants is without merit. As previously stated, the circuit court's findings in the orders granting fees and costs to the KHALP defendants provide in relevant part:

> (3) KRC asserted *the claims of [KHALP]* in this case.
>
> (4) The complaint entitled [*KHALP v. Jones Day*, *i.e.*, the KHALP Appeal,] was brought by KRC in the name of [KHALP] to recover for *purported injury to KHALP* [.]

(Emphases added.) The foregoing unchallenged findings establish that the claims asserted in the KHALP Appeal were KHALP's claims, not KRC's claims, and were brought in order to recover for KHALP's purported injury, not for KRC's purported injury. Inasmuch as "HRCP Rule 17(a) [ (2005) [26]] requires the prosecution of an action 'in the name of the party who, by the substantive law, has the right sought to be enforced[,]'" *Lagondino v. Maldonado*, 7 Haw.App. 591, 596, 789 P.2d 1129, 1132 (1990) (quoting 3A J. Moore, J. Lucas & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 17.07 at 17–42 (2d

---

26. HRCP Rule 17(a) provides in relevant part:
Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose

name a contract has been made for the benefit of another, or a party authorized by statute may sue in its own name without joining with it the party for whose benefit the action is brought.

ed.1989)), and KHALP has "the right sought to be enforced" in the KHALP Appeal, it cannot be said that KRC was the real party in interest in the KHALP Appeal.

Furthermore, we do not believe that KRC "voluntarily submitted to the circuit court's jurisdiction" with respect to the KHALP Appeal. In *Romero,* the ICA held that the respondents did not voluntarily submit themselves to the circuit court's jurisdiction or waive their jurisdictional defense when they: (1) actively participated at a hearing held by the circuit court on the merits of their purported defenses; and (2) submitted a request for an award of attorneys' fees. 82 Hawai'i at 416–17, 922 P.2d at 1029–30. Here, contrary to the KHALP defendants' assertions, KHALP's counsel, Perkin, filed KHALP's complaint. In addition, KRC's counsel, Bickerton, was present at the consolidated hearing on the motions for fees and costs because of his representation of KRC in the KRC Appeal. At the hearing, Bickerton stated that he had "never seen" the motions requesting fees and costs in the KHALP Appeal and that he was never served with such motions. Moreover, it appears that Perkin had simply attached a copy of KRC's memorandum in opposition to the Lawyers' request for fees in the KRC Appeal that Perkin's office had received from KRC. Thus, it cannot reasonably be said that KRC voluntarily submitted to the circuit court's jurisdiction with respect to the KHALP Appeal case.

Accordingly, based on the foregoing, we hold that the circuit court, in granting fees and costs in favor of the KHALP defendants, abused its discretion by holding KRC responsible for the payment of such fees and costs because the circuit court did not have jurisdiction over KRC to enter such an award against it.[27] We next address whether the Lawyers in the KRC Appeal were entitled to an award of fees against KRC.

27. KRC briefly states on appeal without more that the award of fees and costs against KRC in the KHALP Appeal "violate[d] KRC's fundamental due process rights of notice and an opportunity to be heard." However, because we hold that

### 2. The Basis for the Fee Award in the KRC Appeal

KRC contends that the circuit court abused its discretion by determining that the Lawyers should be awarded attorneys' fees pursuant to HRS § 607–14 because the instant action was not in "the nature of assumpsit." KRC argues that "HRS § 607–14 provides for attorneys' fees only when the primary objective of the underlying action is to obtain monetary relief for breach of a contract." KRC asserts that:

> KRC filed the circuit court [l]awsuit exclusively against non-parties to the Partnership Agreement—MOHUSA's and the Mandarin Managers' attorneys. The [first amended complaint] clearly asserted non-contractual claims and sought equitable and tort-based remedies against the [Lawyers].
>
> . . . .
>
> Based on the wrongful conduct alleged[ ] in its [p]rayer for [r]elief, KRC sought declaratory and injunctive relief to disqualify the [Lawyers] from continuing to represent MOHUSA and the Mandarin Managers. KRC also sought general and special compensatory damages, punitive damages, and treble damages under HRS [c]hapter 480. Clearly, treble and punitive damages are not remedies available for breach of contract.
>
> . . . .
>
> It is true that KRC alleged that [the Lawyers] owed KRC various fiduciary duties and duties of good faith arising from their representation of [KHALP]. However, an action is not in the nature of assumpsit simply because a plaintiff's claims concern or relate to a contract. Instead, the plaintiff's primary objective must be to obtain monetary relief for breach of the contract.

KRC primarily relies on this court's decision in *TSA International, Ltd. v. Shimizu Corp.,* 92 Hawai'i 243, 990 P.2d 713 (1999) [hereinafter, *TSA* ], in support of its contention that

the circuit court erred in awarding fees and costs to the KHALP defendants against KRC in the KHALP Appeal, we need not address the contention that KRC's due process rights were violated.

the instant action was not in the nature of assumpsit.

The Lawyers contend that the instant action was in the nature of assumpsit inasmuch as "KRC concededly base[d] all of its damage claims in this action on alleged duties arising solely from [the Lawyers'] contractual relationship with MOHUSA[.]" (Emphasis omitted.) Moreover, the Lawyers assert that KRC's amended complaint "seeks only economic damages based on the frustration of KRC's purported expectations under the agreements for legal services between MOHUSA and [the Lawyers]." The Lawyers maintain that this court's decision in *Blair v. Ing*, 96 Hawai'i 327, 31 P.3d 184 (2001), "is directly on point."

As previously noted, HRS § 607–14 provides in relevant part:

> In all the courts, *in all actions in the nature of assumpsit* . . ., there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable[.]

(Emphasis added.) *See supra* note 13. " 'Assumpsit' is a common law form of action which allows for the recovery of damages for non-performance of a contract, either express or implied, written or [oral], as well as quasi contractual obligations." *Blair*, 96 Hawai'i at 332, 31 P.3d at 189 (some internal quotation marks, brackets, and citation omitted) (format altered).

> [I]n ascertaining the nature of the proceedings on appeal, this court has looked to the *essential character* of the underlying action in the [circuit] court.
>
> . . . .
>
> The character of the action should be determined from the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought. Where there is doubt as to whether an action is in assumpsit or in tort, there is a presumption that the suit is in assumpsit. Further, a plaintiff's prayer for attorney fees is a significant indication that the action is in assumpsit.

*Leslie v. Estate of Tavares*, 93 Hawai'i 1, 5–6, 994 P.2d 1047, 1051–52 (2000) (citations omit-

ted) (emphasis added). In addition, "[t]he manner in which [the] plaintiff has characterized the action may also be accorded some weight." *Larsen v. Pacesetter Sys., Inc.*, 74 Haw. 1, 51, 837 P.2d 1273, 1298 (1992) (citation omitted).

In *TSA*, the plaintiff general partner (TSA) brought claims against the defendant general partner (Shimizu) primarily stemming from allegations of fraud, breach of fiduciary duty, and numerous statutory violations relating to a loan workout agreement to settle the partnership's debt. 92 Hawai'i at 264, 990 P.2d at 734. Shimizu, as the prevailing party at the circuit court level, had moved for an award of attorneys' fees pursuant to HRS § 607–14. The circuit court granted the request for fees. *Id.* at 251, 990 P.2d at 721. On appeal, this court reversed the award of fees, concluding that the action was not in the nature of assumpsit. *Id.* at 264, 990 P.2d at 734. Specifically, this court stated:

> Although Shimizu argues that TSA's claims are all predicated upon the [loan workout agreement] and the partnership agreement, TSA's claims do not involve monetary damages based upon the non-performance of a contractual or quasi-contractual obligation (*i.e.*, breach of contract). The mere fact that TSA's claims relate to a contract between the parties does not render a dispute between the parties an assumpsit action. Instead, TSA's claims for fraud and breach of fiduciary duty sound in tort.
>
> . . . .
>
> [T]his case does not involve an attempt to collect money damages based upon breach of contract. In fact, it is undisputed in this case that there was no breach of either the [loan workout agreement] or partnership agreement. Instead, the dispute in this case stems from TSA's allegations that: (1) [TSA was] fraudulently induced by Shimizu to enter into the [loan workout agreement]; (2) Shimizu's nondisclosure of the appraisals, which constituted a breach of its fiduciary duty, caused TSA to mistakenly enter into the [loan workout agreement]; and (3)[sic] numerous statutory causes of action[, including a claim of

unfair competition under HRS chapter 480]. These considerations compel us to reverse the circuit court's award of fees.

*Id.* (footnotes omitted); *see Leslie*, 93 Hawai'i at 7, 994 P.2d at 1053 (stating that, "[w]hen the recovery of money damages is not the basis of a claim factually implicating a contract, the action is not 'in the nature of assumpsit' ") (citation omitted); *Lee v. Aiu*, 85 Hawai'i 19, 31–32, 936 P.2d 655, 667–68 (1997) (concluding that a claim for specific enforcement of an agreement was not an action in the nature of assumpsit, even though the claimant prayed for damages as alternative relief); *cf. Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 886 (9th Cir.2000) (stating that, "where a party's breach of fiduciary duty claim is based on the non-performance or breach of contractual obligations and the complaint seeks damages flowing from that non-performance or breach, the claim would sound in assumpsit") (citations omitted).

In *Blair*, this court held that a professional malpractice action, alleging claims of breach of implied contract and negligence, was in the nature of assumpsit for purposes of awarding fees pursuant to HRS § 607–14. 96 Hawai'i at 333, 31 P.3d at 190. Both claims were premised on the allegation that the defendant accountant, in providing tax return preparation services, failed to take advantage of certain estate planning techniques that resulted in the loss of savings in excess of $200,000. *Id.* at 332, 31 P.3d at 189. This court stated that, "[b]ecause the negligence claim in this case was derived from the alleged implied contract and was inextricably linked to the implied contract claim by virtue of the malpractice suit, ... it is impracticable, if not impossible, to apportion the fees between the assumpsit and non-assumpsit claims." *Id.* at 333, 31 P.3d at 190. Moreover, this court also considered the fact that "the damages alleged were more closely akin to contract damages than to tort damages because they were economic damages arising out of the alleged frustrated expectation that [the defendant accountant] would take advantage of certain tax-saving devices." *Id.* at 332–33, 31 P.3d at 189–90 (citation omitted). Thus, this court conclud-

ed that, based on the complaint, the "essential character" of the action against the defendant accountant was "in the nature of assumpsit," as provided under HRS § 607–14. *Id.* at 333, 31 P.3d at 190.

In the instant case, the following claims for relief were alleged against the Lawyers in KRC's amended complaint: (1) unfair methods of competition; (2) IICR; and (3) IIPEA. Although the Lawyers essentially argue on appeal that KRC's claims are predicated upon the contractual agreements for legal services between the Lawyers and MOHUSA, KRC's claims do *not* involve monetary damages based upon the non-performance of such a contractual or quasi-contractual obligation. In fact, KRC does not allege that there was a breach of the contractual agreements for legal services between the Lawyers and MOHUSA. Instead, as previously stated, KRC primarily requested (1) a declaration that the Lawyers were disqualified from representing MOHUSA and the Mandarin Managers in connection with their disputes with KHALP or KRC and (2) an injunction (a) preventing the Lawyers from representing MOHUSA and the Mandarin Managers in connection with their disputes with KHALP or KRC and (b) ordering the Lawyers to turn over all their files relating to the work done for MOHUSA and the Mandarin Managers with respect to any matter involving KHALP or KRC to KRC. Although KRC also requested money damages, such a request does not appear to be based upon the non-performance of a contractual or quasi-contractual obligation. The "mere fact" that KRC's claims *relate to* contracts between MOHUSA and the Lawyers does not render a dispute between the parties in the nature of assumpsit. *See TSA*, 92 Hawai'i at 264, 990 P.2d at 734. Finally, inasmuch as KRC does not assert claims of breach of implied contract and negligence, the Lawyers' assertion that *Blair* "is directly on point" is without merit. Thus, based on KRC's amended complaint, the "essential character" of the instant action is not in the nature of assumpsit, as provided under HRS § 607–14. Accordingly, we hold that the circuit court abused its discretion in granting fees to the Lawyers in the KRC Appeal.

## IV. CONCLUSION

Based on the foregoing, we affirm the June 3, 2004 final judgments entered in appeal Nos. 26669 and 26670 in all respects except: (1) based on our holding that the circuit court abused its discretion in granting attorneys' fees to the Lawyers in appeal No. 26669 because the underlying action was not in the nature of assumpsit, we reverse the award of fees as determined in the June 3, 2004 order and referred to in the June 3, 2004 final judgment entered in appeal No. 26669; and (2) based on our holding that the circuit court, in granting attorneys' fees and costs in favor of the KHALP defendants in appeal No. 26670, abused its discretion by holding KRC responsible for the payment of such fees and costs because the circuit court did not have jurisdiction over KRC to enter such an award against it, we reverse the award of fees and costs as determined in the June 3, 2004 orders and referred to in the June 3, 2004 final judgment entered in appeal No. 26670 *without prejudice* to the KHALP defendants' refiling a request for fees and costs if they so choose for redetermination by the circuit court in light of our decision today.

