195 P.3d 701

**In the Matter of the GUARDIANSHIP OF Jane DOE, an Incapacitated Person.**

No. 28139.

Intermediate Court of Appeals of Hawai'i.

Oct. 31, 2008.

John C. Bryant, Jr., Bryant & Remigio, and Lynn M. Youmans, Stirling & Kleintop, Honolulu, on the brief, for petitioner-appellant.

RECKTENWALD, C.J., WATANABE and FUJISE, JJ.

Opinion of the Court by
RECKTENWALD, C.J.

In this confidential guardianship proceeding, Petitioner/Appellant (Petitioner) appeals from the August 14, 2006 "Order on Petitioner's Motion for Attorney's Fees and Costs Pursuant to Rule 68, Hawaii Family Court Rules" filed in the Family Court of the Second Circuit (family court).[1]

Petitioner filed a petition seeking to be appointed guardian for his mother (Mother), whom he claimed was incapacitated. His

1. The Honorable Simone C. Polak presided.

2. At the time of the proceedings here, HFCR Rule 68 (2000) provided:
 Rule 68. OFFER OF SETTLEMENT.
 At any time more than 20 days before any contested hearing held pursuant to [Hawaii Revised Statutes (HRS)] sections 571–11 to 14 (excluding law violations and criminal matters) is scheduled to begin, any party may serve upon the adverse party an offer to allow a judgment to be entered to the effect specified in the offer. Such offer may be made as to all or some of the issues, such as custody and visitation. Such offer shall not be filed with the court, unless it is accepted. If within 10 days after service of the offer the adverse party serves written notice that the offer is accepted, any party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the court shall treat those issues as uncontested. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible, except in a

brother (Brother 1) and sister-in-law (Sister-in-Law) appeared at the initial hearing on the petition, and participated in the proceedings thereafter. Petitioner made a Hawaiʻi Family Court Rules (HFCR) Rule 68[2] offer to settle to Brother 1 and Sister-in-Law early in the litigation, and they did not respond to the offer. After trial, the family court found that Mother was incapacitated and appointed Petitioner as guardian. Petitioner then sought an award of attorney's fees and costs, pursuant to HFCR Rule 68, from Brother 1 and Sister-in-Law. The family court denied that motion, on the ground that Brother 1 and Sister-in-Law "were not *adverse parties* on ... the date the Rule 68 offer was tendered[.]"[3] (Emphasis in original.)

On appeal, Petitioner argues that the family court erred in that conclusion, and that it accordingly should have required Brother 1 and Sister-in-Law to pay Petitioner's fees and costs for the period after Petitioner made the HFCR Rule 68 offer. Because we conclude that Brother 1 and Sister-in-Law were not parties to the proceeding when Petitioner made his Rule 68 offer, we affirm.

## I. BACKGROUND FACTS

The pertinent background facts, as reflected in the record and in the uncontested findings of fact, are as follows.[4]

proceeding to determine costs and attorney's fees. If the judgment in its entirety finally obtained by the offeree is patently not more favorable than the offer, the offeree must pay the costs, including reasonable attorney's fees incurred after the making of the offer, unless the court shall specifically determine that such would be inequitable in accordance with the provisions of HRS section 580-47 or other applicable statutes, as amended.

3. This conclusion was included in the April 10, 2007 Findings of Fact and Conclusions of Law (FoF/CoL) at CoL 13.

4. The FoF/CoL contain 135 findings of fact, only one of which (FoF 104) is challenged in part by Petitioner on appeal. Brother 1 and Sister-in-Law did not file an answering brief. Findings which are not challenged on appeal are binding. *Okada Trucking Co. v. Bd. of Water Supply,* 97 Hawaiʻi 450, 458, 40 P.3d 73, 81 (2002).

On July 25, 2005, Petitioner filed a "Petition for Appointment of a Guardian of the Person of an Incapacitated Person" in FC–G 05–1–0037. The petition alleged that Mother was incapacitated due to Alzheimer's dementia, and sought the appointment of Petitioner as guardian. The petition identified Petitioner, Brother 1, and another brother (Brother 2) as Mother's adult children, and asserted that Petitioner, Brother 1 and Sister–in–Law held "a medical power of attorney" for Mother. The petition was served on Mother, Brother 1, Sister–in–Law, and Brother 2.

The first hearing on the petition was held on August 15, 2005.[5] Petitioner, Petitioner's counsel, Mother's counsel, Brother 1, and Sister–in–Law attended the hearing. The transcript of this hearing does not clearly indicate whether Mother attended, although a written trial-setting order entered after the hearing indicates that Mother was present.

At the hearing, Mother's counsel raised and then waived an objection with regard to service of the petition, and asked for an evidentiary hearing. The family court then addressed Brother 1 and Sister–in–Law, noting that "since you are present and have a right to appear at these proceedings," the court wanted to get "some indication of your response to the petition." Sister–in–Law did not respond to the court's inquiry.[6] Brother 1 stated, "I oppose [sic] to a guardianship at this time," because he felt that Mother was "quite capable of living alone." The court explained some of the issues that would need to be addressed at the evidentiary hearing, and then noted:

[Y]ou are here on your own without an attorney which is okay, and you can proceed in this action and participate in it on your own although you may want to, at some point, consult with an attorney if you have any questions about the procedures or what ultimately the Court's going to be asked to decide. But just to make it clear you're not represented by an attorney at this time.

[Brother 1]: That's correct.

THE COURT: Okay. But you are here responding orally saying that you are opposed at this time to the request that this Court appoint a guardian for your mother.

[Brother 1]: That is correct.

After addressing some additional procedural issues, including finding that Brother 2 was in default, the court noted:

Well, let's see if we all understand one another. We're here today because clearly the petition at this time is being opposed by [Mother], as well as at least one of the sons of [Mother]. And therefore this matter is what we would consider to be a contested matter.

. . . .

The policy of the Court is then to set this matter for a contested hearing. We're going to set a date for that hearing. And if there are any other matters that need to be discussed so that we can proceed with an evidentiary hearing I want to hear those so that all parties understand what will be necessary at the time of the hearing.

That will be the time in which all parties will have the right to present evidence either in support of or in opposition to the petition. It is an evidentiary hearing so for purposes of persons who are not represented by an attorney you need to understand that at the time of the hearing there will be rules applied as far as the presentation of evidence.

And if you have questions about that, as I've already said, you may want to consult with an attorney just so you understand when you're here at the hearing and there is evidence to be presented that it's done in the manner in which the evidence would be admissible.

. . . .

... Since this is a contested matter the Court would also set a pretrial. At that

---

**5.** The Honorable Eric G. Romanchak presided over the August 15, 2005 hearing. Judge Polak presided over all other proceedings.

**6.** The transcript of the August 15, 2005 hearing does not indicate that anything was said by Sister–in–Law, although at the end of the proceeding a person referred to in the transcript as "unidentified female" recounts a discussion that she had with Brother 2 on the morning of the hearing.

pretrial I would order that the parties file with the Court at least one week in advance of pretrial a proposed witness list as well as exhibit list, and a brief proposed position statement.

The contested hearing was set for October 13, 2005.

On August 30, 2005, Petitioner filed a motion for appointment of a Kokua Kanawai and a motion for an independent mental examination of Mother. On September 7, 2005 Petitioner issued several subpoenas duces tecum to banks requesting Brother 1 and Sister–in–Law's financial information.

Brother 1 and Sister–in–Law hired attorney Elizabeth Melehan to represent them,[7] although the exact date of that retention does not appear in the record. In a letter dated September 14, 2005 to Ms. Melehan, Petitioner made an offer of settlement to Brother 1 and Sister–in–Law pursuant to HFCR Rule 68. Petitioner offered that (1) he be appointed as Mother's guardian, (2) he would provide notice two weeks in advance of any major medical procedure for Mother, and (3) he would provide sixty days' notice prior to listing for sale the house in which Mother lived. Although Ms. Melehan received the letter, Brother 1 and Sister–in–Law did not respond to it.

On September 19, 2005, Brother 1 and Sister–in–Law, through their attorney, filed a document entitled "[Brother 1 and Sister–in–Law's] Response to Petitioner's Motion for Appointment of Kokua Kanawai and for Motion for Independent Mental Evaluation." Brother 1 and Sister–in–Law agreed that a Kokua Kanawai should be appointed, but opposed an independent mental evaluation. They also suggested that the evidentiary hearing should be continued since "[a] thorough investigation cannot possibly be done and a report provided to the parties in advance of the hearing. . . ." In a declaration attached to the response, Brother 1 objected to the petition stating, "I believe that my mother does not need a guardian at this time," and "I believe that in no event would

it be in my mother's best interests that Petitioner be appointed her guardian."

On September 21, 2005, the family court held a hearing on the motion for appointment of a Kokua Kanawai and the motion for an independent mental examination. At the beginning of the hearing, attorney Guy Haywood stated that he was "appearing on behalf of Liz Melehan who represents [Brother 1 and Sister–in–Law] who are also parties in the case." Counsel for Petitioner reported that "there's a stipulation that's been signed regarding the motion appointing [K]okua [K]anawai," and the court rescheduled the trial to December 9, 2005.

On September 22, 2005, the family court appointed Susan Kinsman as Kokua Kanawai for Mother. The family court also ordered Mother to submit to an independent mental examination.

On September 23, 2005, Brother 1 and Sister–in–Law filed an "Ex Parte Motion for Temporary Restraining Order and Motion to Quash Subpoena and for Protective Order" (Motion for TRO and Motion to Quash).[8] Brother 1 and Sister–in–Law sought a restraining order prohibiting the banks from providing any information pursuant to Petitioner's subpoenas. In a declaration attached to the Motion for TRO and Motion to Quash, Brother 1 and Sister–in–Law stated, "We object to the Petition for Guardianship because we do not believe that Mother needs a guardian at this time and because we do not believe that Petitioner is an appropriate person to be Mother's guardian in the event she does need one." The family court entered an order granting the Motion for TRO, and scheduled a hearing on the Motion to Quash.

On October 13, 2005, "Petitioner's Motion for Accounting of Cash Withdrawals from [Mother's] Bank Account" (Motion for Accounting) was filed, seeking an explanation of Mother's expenditures. On October 18, 2005, Brother 1 and Sister–in–Law filed a declaration in response to Petitioner's Motion for

---

7. This finding is reflected in FoF 100.

8. The Motions stated that they were made pursuant to HFCR Rule 26(3)(c). However, there is

no Rule 26(3)(c), and it appears that Brother 1 and Sister–in–Law were invoking HFCR Rule 26(c)(3).

Accounting. In the declaration, Brother 1 and Sister–in–Law stated that they "have power of attorney for [Mother's] financial affairs[,]" that "[f]or approximately five years, [they] have been helping [Mother] with her checkbook and her monthly expenses[,]" and that they "still believe that Petitioner does not have the right to receive such information from us." Brother 1 and Sister–in–Law requested an award of attorney's fees and costs for defending against Petitioner's Motion for Accounting.

On October 19, 2005, the family court heard the Motion to Quash and the Motion for Accounting. Brother 1 and Sister–in–Law argued that there was no legal basis for the Motion for Accounting since they were only "part[ies] by virtue of notice, not a defendant...." The family court took the matter under advisement, and asked for briefing on the question of Brother 1 and Sister–in–Law's status in the litigation.

On October 24, 2005, Brother 1 and Sister–in–Law filed a "Memorandum Regarding Attorney's Fees and Costs." Brother 1 and Sister–in–Law stated that "[b]ecause Petitioner has provided no legal basis to seek an accounting of [Brother 1 and Sister–in–Law] prior to their becoming parties' [sic] to this action, their undersigned counsel seek [sic] her attorney's fees and costs in defending such a request." Brother 1 and Sister–in–Law further claimed that "[a]t the time of the issuance of the subpoenas and [Brother 1] and [Sister–in–Law's] objections to the subpoenas their status was of interested persons in this matter, having received statutory notice of the Petition pursuant to HRS Section 560:5–309." Brother 1 and Sister–in–Law argued that they were not parties to the action and that their involvement by voluntarily responding to discovery requests and filing a motion for a protective order did not make them parties. They also claimed that "[a]bsent a motion to intervene, an interested person cannot be deemed a party." Brother 1 and Sister–in–Law then requested that the family court deny Petitioner's request for attorney's fees, and award attorney's fees against Petitioner for seeking an accounting and their financial records.

Also on October 24, 2005, Brother 1 and Sister–in–Law issued subpoenas duces tecum to the records custodians of five of Mother's physicians for Mother's records, and to the records custodians of an attorney and a law firm for all records involving Mother, Petitioner, Brother 1, and Sister–in–Law.

On October 25, 2005, Petitioner filed a memorandum regarding Brother 1 and Sister–in–Law's status as parties. Petitioner argued that Brother 1 and Sister–in–Law were parties because they had actively participated in the ongoing litigation since August 15, 2005, when they appeared at the first hearing on the matter and objected to the Petition.

On November 1, 2005, the family court denied Petitioner's request for attorney's fees and granted Brother 1 and Sister–in–Law's request for attorney's fees. The family court found that it could not order an accounting because Brother 1 and Sister–in–Law were not yet parties to the action, were merely "interested parties," and they had not filed a motion to intervene and requested to participate in the proceeding pursuant to HFCR Rule 24 and HRS § 560:5–308(b).

On November 22, 2005, Brother 1 and Sister–in–Law filed a Motion to Intervene which stated that if they were permitted to intervene, they would file a petition for appointment of co-guardians of the person for Mother. The record does not indicate whether the Motion to Intervene was granted or denied. However, on November 23, 2005 Brother 1 and Sister–in–Law filed a "Petition for Appointment of Co–Guardians of the Person of an Incapacitated Person," in FC–G 05–1–0068.

On December 5, 2005 the parties stipulated to consolidate the cases. Trial began on December 8, 2005, and continued for three additional days spread out over several months. Brother 1 and Sister–in–Law both testified at the trial, called witnesses to testify, and cross-examined Petitioner's witnesses. During the course of the trial, Petitioner, Brother 1, Sister–in–Law, and Mother stipulated that Mother was incapacitated and that two independent mental examiners found her to be an incapacitated person as defined in HRS § 560:5–102.

After the completion of the trial, the family court issued an order on March 28, 2006, finding that Mother was incapacitated and appointing Petitioner as Mother's guardian.

On May 23, 2006, Petitioner filed "Petitioner's Motion for Attorney's Fees and Costs Pursuant to Rule 68, Hawai'i Family Court Rules" (Motion for Fees and Costs). Petitioner noted that he made the offer of settlement to Brother 1 and Sister–in–Law on September 14, 2005 and received no response. Petitioner argued that his offer of settlement to Brother 1 and Sister–in–Law was made more than 20 days in advance of trial, Brother 1 and Sister–in–Law did not accept the offer within 10 days, and Brother 1 and Sister–in–Law did not obtain a patently more favorable judgment than the offer.

On July 11, 2006, Brother 1 and Sister–in–Law filed a memorandum in opposition to Petitioner's Motion for Fees and Costs. Brother 1 and Sister–in–Law claimed that guardianship proceedings are not adversarial or contested, the family court already ruled that they were not.parties and that ruling was the law of the case, and it would be inequitable to award fees and costs pursuant to HFCR Rule 68.

On August 14, 2006, the family court denied Petitioner's Motion for Fees and Costs. On April 10, 2007, the family court issued findings of fact and conclusions of law which state in part:

II. *FINDINGS OF FACT.*

. . . .

98. [Brother 1] and [Sister–in–Law] attended the hearing on August 15, 2005, unrepresented by counsel. [Brother 1] and [Sister–in–Law] objected to the Petition for Guardianship on the record because they did not believe that [Mother] was incapacitated and in need of a guardian, and a Contested Guardianship hearing was set for October 13, 2005, at 8:30 a.m. in Courtroom 3B.

. . . .

104. On September 14, 2005, Petitioner's attorney . . . sent Ms. MELEHAN an offer of settlement pursuant to Rule 68 of the Hawai'i Family Court Rules ("Rule 68 offer"). Ms. MELEHAN received that offer of settlement.

. . . .

110. [Brother 1] and [Sister–in–Law] never responded to Petitioner's Rule 68 offer.

111. Because Ms. MELEHAN, [Brother 1] and [Sister–in–Law] did not respond to the Rule 68 offer within 10 days of service of the offer, the unaccepted Rule 68 offer was deemed withdrawn by the very terms of Rule 68.

112. At the time when Petitioner first extended his Rule 68 offer, [Brother 1] and [Sister–in–Law] objected to the Guardianship because it was their belief that [Mother] was not incapacitated and in need of a guardian.

. . . .

129. The final judgment in the case was not more favorable than the Rule 68 offer sent to Ms. MELEHAN by [Petitioner's counsel] on September 14, 2005.

. . . .

III. *CONCLUSIONS OF LAW.*

. . . .

13. The provisions of Hawai'i Family Court Rule 68 did not applied [sic] in the above-entitled action because [Brother 1] and [Sister–in–Law] were not *adverse parties* on September 14, 2005, the date the Rule 68 offer was tendered, pursuant to the provisions of HRS § 560:5–304(b)(2)(B), 560:5–309(b) and 560:5–308(b).

14. At best, [Brother 1] and [Sister–in–Law] became adverse parties within the meaning of Rule 68, when they until they [sic] filed their own petition for Guardianship seeking appointment as co-guardians on November 23, 2005 under FC–G 05–1–0068.

15. Therefore, the Court does not have jurisdiction to grant Petitioner's Motion for Attorney's Fees And Costs Pursuant To Rule 68, Hawai'i Family Court Rules

because [Brother 1] and [Sister–in–Law] are not adverse parties to the action.

(Emphasis in original; footnotes omitted.)

■ Petitioner timely filed this appeal. On appeal, Petitioner contends that the family court erred in denying his HFCR Rule 68 Motion for Fees and Costs, based on its conclusion that Brother 1 and Sister–in–Law were not adverse parties.[9]

## II. STANDARD OF REVIEW

"The [trial] court's grant or denial of attorneys' fees and costs is reviewed under the abuse of discretion standard." *Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel*, 113 Hawai'i 251, 266, 151 P.3d 732, 747 (2007) (citation omitted). *Kamaka v. Goodsill Anderson Quinn & Stifel*, 117 Hawai'i 92, 105, 176 P.3d 91, 104 (2008).

## III. DISCUSSION

### A. HFCR Rule 68 applies to guardianship proceedings

■ The plain language of HFCR Rule 68 makes it applicable to guardianship proceedings. At the time of the proceedings here, HFCR Rule 68 applied to "any contested hearing held pursuant to HRS sections 571–11 to 14 (excluding law violations, criminal matters, and child protection matters)[.]" Hawaii Revised Statutes (HRS) § 571–14(d) (2006) states "the [family] court shall have concurrent jurisdiction with the circuit court in all proceedings to appoint a guardian of an adult." Therefore, HFCR Rule 68 may be invoked in guardianship proceedings such as those at issue here.[10]

### B. Brother 1 and Sister–in–Law were not parties within the meaning of HFCR Rule 68 when Petitioner made his rule 68 offer to settle

■ Petitioner submitted his HFCR Rule 68 offer to settle to counsel for Brother 1 and Sister–in–Law on September 14, 2005. The rule provides that if the judgment is not patently more favorable than the offer, then "the offeree must pay the costs, including reasonable attorney's fees incurred *after the making of the offer.* ..." (Emphasis added.) Since the potentially adverse consequences of the rule for the offeree flow from the time of making the offer, we conclude that a HFCR Rule 68 offer to settle is not effective unless the offeree is an "adverse party" within the meaning of the rule at the time the offer is made. *Cf. Clark v. Sims*, 28 F.3d 420, 424 (4th Cir.1994) (interpreting Federal Rule of Civil Procedure (FRCP) Rule 68, court notes that "[o]ffers of compromise made before suit is filed do not fall within the rule"); 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3003 at 100 (1997) (interpreting FRCP Rule 68, the authors observe that "[a]n offer of judgment may be made only by a party defending against a claim. Therefore an offer of compromise made by defendant before the commencement of the action is not an offer of judgment under Rule 68. ...").

Neither the HFCR nor the Uniform Guardianship and Protective Proceedings Act (the Act), HRS §§ 560:5–101 to 5–433 (2006), the statute under which the petition was brought, provides an explicit definition of who is a party in such an action. However, certain inferences can be drawn based on the provisions of the Act. The Act provides that "[a]n individual or a person interested in the individual's welfare may petition for a determination of incapacity, in whole or in part, and for the appointment of a limited or unlimited guardian for the individual." HRS § 560:5–304(a). The person for whom the appointment of a guardian is sought is referred to as the respondent. HRS § 560:5–102.

---

9. Petitioner also challenges CoL 14, and a footnote to FoF 104 in which the family court found that "apparently the Rule 68 offer was never submitted to [Mother], the Respondent, who is a party to this action." However, Petitioner does not provide argument with regard to those specific points, and accordingly, we deem them waived. Hawai'i Rules of Appellate Procedure Rule 28(b)(7).

10. This conclusion is also consistent with HFCR Rule 81(a)(8), which provides that Part A of the rules, which consists of rules 1–89, applies to proceedings for guardianship of incapacitated persons under HRS chapter 560, article V.

Upon the filing of a petition, the family court is required to set a date and time for a hearing. HRS § 560:5–305(a). The family court can appoint a limited or unlimited guardian "only if it finds by clear and convincing evidence that ... [t]he respondent is an incapacitated person; and ... [t]he respondent's identified needs cannot be met by less restrictive means, including use of appropriate and reasonably available technological assistance[.]" HRS § 560:5–311(a)(1).

The Act sets forth multiple requirements for the content of the petition, including "[t]he name and address of any proposed guardian and the reason why the proposed guardian should be selected[,]" and "[t]he reason why guardianship is necessary, including a brief description of the nature and extent of the respondent's alleged incapacity[.]" HRS § 560:5–304(b)(7)–(8). The petition must identify various categories of people by name and address, including "[a]dult children" and "any agent appointed by the respondent under any medical directive, ... or health care power of attorney[.]" HRS § 560:5–304(b)(2)(B)(6).

The Act provides that the petition and notice of the hearing must be served on the respondent, and that notice of the hearing must also be given to the various persons who were identified in the petition:

Notice. (a) A copy of a petition for guardianship and notice of the hearing on the petition shall be served personally on the respondent. The notice shall include a statement that the respondent must be physically present unless excused by the court, inform the respondent of the respondent's rights at the hearing, and include a description of the nature, purpose, and consequences of an appointment. A fail-

ure to serve the respondent with a notice substantially complying with this subsection shall preclude the court from granting the petition.

(b) In a proceeding to establish a guardianship, notice of the hearing shall be given to the persons listed in the petition. For good cause, the court may waive notice to any persons listed in the petition other than the respondent, upon a showing that all reasonable efforts have been made to ascertain the identity and address of the person or to effect notice, that the efforts were unsuccessful, and that further efforts should not be required because that person has not demonstrated a reasonable degree of interest in or concern about the respondent. Failure to give notice under this subsection shall not preclude the appointment of a guardian or the making of a protective order.

HRS § 560–5:309.[11]

The Act also provides that "[a]n interested person not otherwise entitled to notice who desires to be notified before any order is made in a guardianship proceeding, ... may file a request for notice with the clerk of the court in which the proceeding is pending." HRS § 560:5–116. The request "is not effective unless it contains a statement showing the interest of the person making it and the address of that person or a lawyer to whom notice is to be given," and is only effective as to proceedings conducted after its filing. Id.

HRS § 560:5–308 discusses the roles to be played in the proceedings by the respondent, as well as other persons:

Judicial appointment of guardian; presence and rights at hearing. (a) Unless excused by the court for good cause, the proposed guardian shall attend the

---

11. Act 161, 2004 Haw. Sess. L. § 1 at 665, which enacted the notice provision in HRS § 560:5–309, was based upon the 1998 version of the Uniform Guardianship and Protective Proceedings Act (UGPPA). See Hse. Stand. Comm. Rpt. No. 597–04, in 2004 House Journal, at 1638–42; Sen. Stand. Comm. Rep. No. 2971, in 2004 Senate Journal, at 1475–6; Sen. Stand. Comm. Rep. No. 3129, in 2004 Senate Journal, at 1562. Section 404 of the UGPPA is similar to HRS § 560:5–309. The commentary to Section 404 states:

Personal service of the petition and notice of hearing on the respondent is required, unless the respondent is missing or personal service cannot be made, then the State's method for substituted service must be used. A failure to serve the respondent is jurisdictional, as is a notice that does not substantially comply with the requirements of subsection (a).... Subsection (b) requires that notice of hearing be given to the people listed in the petition but failing to give notice to those listed (other than the respondent) is not jurisdictional.

UGPPA, 8A U.L.A.382–83 (2003).

hearing. The respondent shall attend and participate in the hearing, unless excused by the court for good cause. The respondent may present evidence and subpoena witnesses and documents, examine witnesses, including any court-appointed physician, psychologist, or other individual qualified to evaluate the alleged impairment, and the kokua kanawai, and otherwise participate in the hearing. The hearing may be held in a location convenient to the respondent and may be closed upon the request of the respondent and a showing of good cause.

(b) Any person may request permission to participate in the proceeding. The court may grant the request, with or without hearing, upon determining that the best interest of the respondent will be served. The court may attach appropriate conditions to the participation.

*Id.*

Based on the provisions of the Act, it is clear that the respondent is a party within the meaning of HFCR Rule 68. The respondent must be served with the petition before the proceeding can go forward and is entitled to the procedural rights—the right to subpoena witnesses and documents and to examine witnesses—typically given at trial to parties to civil litigation.

In contrast, although the other persons identified in the petition are entitled to notice, the notice requirement can be excused by the court, and the Act does not confer any other procedural rights on them simply because they are identified in the petition. Instead, the Act provides generally that "[a]ny person may request permission to participate in the proceeding[,]" and that the request "may" be granted by the court "upon determining that the best interest of the respondent will be served." HRS § 560:5–308(b). Thus, we conclude that other persons identified in the petition are not parties within the meaning of HFCR Rule 68 unless the re-

quirements of HRS § 560:5–308(b) are met. *See Hickman v. Hickman,* 805 N.E.2d 808, 818 (Ind.Ct.App.2004) (interpreting provisions similar to HRS § 560:5–308 and 309, court holds that "notice is simply to provide other immediate family members with notification of the proposed guardianship and an opportunity to request leave to participate in the guardianship.... [The statute] does not differentiate between persons listed on the petition or persons receiving notice of the petition and other interested persons in requiring that such persons request leave of the trial court to participate in the proceedings.").

■ Turning first to Sister–in–Law, the record does not reflect that she "requested permission" from the family court to participate as a party prior to September 14, 2005, or that the family court made any finding prior to that date that her participation would be in the best interest of Mother. Although Sister–in–Law appeared at the August 15, 2005 hearing, the record does not establish that she spoke at all.[12] We cannot conclude that her conduct at the hearing constituted a "request" to participate as a party.

■ Brother 1 spoke at the August 15, 2005 hearing, and made clear that he opposed the petition. The family court, erroneously in our view, stated that Brother 1 had "a right to appear in these proceedings" and never made a finding that Brother 1's participation would be in the best interest of Mother. Although Brother 1 did not object to the family court's statement that he had a "right to appear," he never requested to participate in the proceedings and the family court never explicitly confirmed that Brother 1 wanted to be accorded the status of a party.

In short, the requirements of HRS § 560:5–308(b) were not met with regard to either Sister–in–Law or Brother 1.[13] We ac-

---

**12.** FoF 98 found that "[Brother 1] and [Sister–in–Law] objected to the Petition for Guardianship on the record" at the August 15, 2005 hearing. It is not apparent from the record what the basis was for the court's finding that Sister–in–Law objected. Nevertheless, because this finding

is unchallenged, *see* note 4 supra, we accept it as binding.

**13.** Although Brother 2 is not a party to this appeal, we note that at the August 15, 2005 hearing, the family court found him in "default" and observed that "[h]e was required either to be

knowledge that Brother 1's situation poses a closer question, and it could be argued that there was sufficient compliance with HRS § 560:5–308(b) with regard to him. However, we conclude that, particularly in view of the potential exposure to attorney's fees awards under HFCR Rule 68, a clearer determination of his status as a party was required. To avoid confusion such as that which arose in this case, there should be a bright-line determination of an individual's status as a party to a guardianship proceeding. Compliance with the requirements of HRS § 560:5–308(b) assists in providing that bright line.

 Family courts should, accordingly, ensure that the status of individuals who appear at the initial hearing or participate in subsequent proceedings is clear on the record, by determining whether those individuals wish to request leave to participate as parties,[14] and if so, to make the necessary finding on the record as to whether or not their participation would be in the best interest of the respondent and what conditions, if any, will be placed on their participation. By requiring this clear determination, we do not mean to suggest that such individuals can only be accorded the status of full parties or of non-parties. Put another way, we leave open the possibility that a family court might allow an individual to participate on some limited basis that would not rise to the level of "party" status for the purposes of HFCR Rule 68. However, if an individual seeks to participate with rights similar to those accorded to the respondent, and the family court finds that such participation is in the best interest of the respondent, then the individual should be designated as a party and subject to HFCR Rule 68.

It is true, as Petitioner contends, that Brother 1 and Sister–in–Law filed pleadings, caused the clerk to issue subpoenas and otherwise acted as if they were parties subsequent to the August 15, 2005 hearing. However, even assuming arguendo that at some point they would have been judicially estopped from claiming they were not parties,[15] the record here does not support the application of estoppel based upon the actions of Brother 1 and Sister–in–Law as of September 14, 2005, when the HFCR Rule 68 offer to settle was served on their attorney.

Accordingly, the August 14, 2006 Order on Petitioner's Motion for Attorney's Fees and Costs Pursuant to Rule 68, Hawaii Family Court Rules filed in the Family Court of the Second Circuit is hereby affirmed.

---

present or to have filed a written response to the petition." The family court did not identify the basis for that requirement in the Act. Although an argument could be made that such a requirement is inconsistent with the provisions of HRS § 560:5–308(b), we do not resolve that question here since Brother 2 is not before us.

14. We do not believe that a formal motion to intervene under HFCR Rule 24 is required; rather, HRS § 560:5–308(b) allows a relatively informal process, "with or without hearing."

15. *See, e.g., Torres v. Torres,* 100 Hawai'i 397, 408, 60 P.3d 798, 809 (2003). Although Petitioner argued, in a motion to reconsider the family court's November 1, 2005 order, that judicial estoppel applied, he did not advance that theory when he filed his HFCR Rule 68 Motion for Fees and Costs, nor did he raise it as a point of error on appeal.